WHELCHEL *v.* McDONALD, WARDEN.

No. 109.   Argued November 10, 1950.—Decided December 4, 1950.

*Hugh Carney* argued the cause and filed a brief for petitioner.

*John F. Davis* argued the cause for respondent. With him on the brief were *Solicitor General Perlman, Assistant Attorney General McInerney* and *Robert S. Erdahl.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Petitioner, while on active duty with the Army in Germany, was convicted by a general court-martial of rape on a German girl. The sentence of death, originally imposed, was reduced to a term of years. This case arises on a petition for a writ of habeas corpus filed in the District Court, challenging the legality of petitioner's detention under that sentence. That court denied the petition and the Court of Appeals affirmed. 178 F. 2d 760. The main point presented by the petition for certiorari is whether the military tribunal that tried petitioner was deprived of jurisdiction by reason of the treatment of the insanity issue tendered by petitioner. We hold that it was not.

The charges against petitioner were referred to an investigating officer in accordance with Article 70 of the Articles of War, 10 U. S. C. (1946 ed.) § 1542. The investigating officer reported that he had no reasonable ground for believing petitioner was deranged. A neuro-psychiatrist attached to petitioner's division reported, after examining petitioner, that he was legally sane. The Division Staff Judge Advocate recommended a general court-martial trial, stating there was no reason to believe petitioner to be temporarily or permanently deranged. The defense of insanity was not raised, however, either at the pretrial investigation or the trial itself. After the trial

petitioner's trial counsel wrote the Division Commanding General requesting that the case be reopened and petitioner be given a neuropsychiatric examination on the ground that counsel had received information that petitioner might have been in an epileptic fit at the time of the offense. This request received the concurrence of five of the six members of the court-martial and was accompanied by similar letters from two officers and a sergeant of petitioner's division. The record was in this condition when it was reviewed by General Eisenhower of the European Theatre of Operations, by the Board of Review of that Theatre, and by the Assistant Judge Advocate General.

There was evidence in the hearing before the District Court that petitioner may have been either insane or drunk at the time of the crime.

We put to one side the due process issue which respondent presses, for we think it plain from the law governing court-martial procedure that there must be afforded a defendant at some point of time an opportunity to tender the issue of insanity. It is only a denial of that opportunity which goes to the question of jurisdiction. That opportunity was afforded here. Any error that may be committed in evaluating the evidence tendered is beyond the reach of review by the civil courts.

The Manual prescribes the ordinary test of criminal responsibility, *viz.*, whether the accused was able to tell right from wrong.[1] Insanity is a defense.[2] The pretrial

---

[1] Paragraph 78*a* Manual for Courts-Martial (1928 ed.) provides: "A person is not mentally responsible for an offense unless he was at the time so far free from mental defect, disease, or derangement as to be able concerning the particular acts charged both to distinguish right from wrong and to adhere to the right."

[2] Paragraph 63 of the Manual provides: "The court will inquire into the existing mental condition of the accused whenever at any time while the case is before the court it appears to the court for any reason

procedure prescribed in Article 70 offers the accused an opportunity to present the defense of insanity. Petitioner had that opportunity. The Manual provides that the reviewing authority (here the Commanding General of the Division) "will take appropriate action where it appears from the record or otherwise that the accused may have been insane" at the time of the crime, whether or not such question was raised at the trial.[3] That is also a provision which is applicable to the confirming authority[4] (here the General in charge of the European Theatre of Operations). The confirming authority had before it the request of the defense counsel and the other letters and recommendations submitted to it. The Manual does not require either the reviewing authority or the confirming authority to halt the proceedings, make a further investigation, or start over again. It entrusts the matter to the discretion of those authorities.

Petitioner had a further consideration by the military authorities of the insanity issue which he tenders. By Article 53 of the revised Articles of War, Act of June 24, 1948, 62 Stat. 639, 642, 10 U. S. C. (Supp. III) § 1525, which was effective February 1, 1949, the Judge Advocate General is authorized "upon application of an accused person, and upon good cause shown, in his discretion to grant

---

that such inquiry ought to be made in the interest of justice. Reasons for such action may include anything that would cause a reasonable man to question the accused's mental capacity either to understand the nature of the proceedings or intelligently to conduct or to cooperate in his defense."

Paragraph 75a provides: "If the court determines that the accused was not mentally responsible, it will forthwith enter a finding of not guilty as to the proper specification."

Paragraph 78a provides: "Where a reasonable doubt exists as to the mental responsibility of an accused for an offense charged, the accused can not legally be convicted of that offense."

[3] Id. ¶ 87b.

[4] Id. ¶ 88.

a new trial" in any court-martial case on application within the prescribed time limits. That Article became effective after the petition for habeas corpus was filed. But while the case was pending on appeal the Court of Appeals delayed final action while petitioner made application under Article 53. The Judge Advocate General reviewed all the evidence on the insanity issue which petitioner had tendered both to the military authorities and to the District Court in the habeas corpus proceeding and concluded "I entertain no doubt that Whelchel was so far free from mental defect, disease, and derangement as to be able concerning the particular acts charged both to distinguish right from wrong and to adhere to the right . . . ."

Any error by the military in evaluating the evidence on the question of insanity would not go to jurisdiction, the only issue before the court in habeas corpus proceedings.

The law member of the court-martial was not named from the Judge Advocate General's Department. But since no showing was made of the availability of such a member, a case of gross abuse of discretion has not been established. See *Hiatt* v. *Brown,* 339 U. S. 103, 109–110.

Under Article 4 of the revised Articles of War an accused may now request that enlisted men be included on the court-martial that tries him.[5] There was no such provision of the law when petitioner was tried.[6] But the fact that he was tried by a court-martial composed wholly of officers does not raise a question which goes to jurisdiction. Petitioner can gain no support from the analogy

---

[5] 10 U. S. C. (Supp. III) § 1475.

[6] At the time of petitioner's trial Article 4, 10 U. S. C. (1946 ed.) § 1475, provided in pertinent part as follows: "All officers in the military service of the United States, and officers of the Marine Corps when detached for service with the Army by order of the President, shall be competent to serve on courts-martial for the trial of any persons who may lawfully be brought before such courts for trial."

of trial by jury in the civil courts. The right to trial by jury guaranteed by the Sixth Amendment is not applicable to trials by courts-martial or military commissions. See *Kahn* v. *Anderson,* 255 U. S. 1, 8; *Ex parte Quirin,* 317 U. S. 1, 40–41. Courts-martial have been composed of officers both before and after the adoption of the Constitution.[7] The constitution of courts-martial, like other matters relating to their organization and administration (see *Kahn* v. *Anderson, supra,* 6–7; *Swaim* v. *United States,* 165 U. S. 553, 556–559; *Mullan* v. *United States,* 140 U. S. 240, 244–245; *Martin* v. *Mott,* 12 Wheat. 19, 34–35), is a matter appropriate for congressional action.

*Affirmed.*

---

[7] See collection of precedents in Winthrop's Military Law and Precedents (2d ed., Reprint 1920): British Articles of War of 1765, p. 942; American Articles of War of 1776, p. 967; American Articles of War of 1806, pp. 981–982.