Carl Andrew DE COSTER, Plaintiff-Appellant,

v.

P. J. MADIGAN, Acting Warden, Defendant-Appellee.

No. 11312.

United States Court of Appeals
Seventh Circuit.

June 27, 1955.

908

Urban P. Van Susteren, Appleton, Wis., for appellant.

James W. Booth, Lieutenant Colonel, U. S. Army, Washington, D. C., Jack C. Brown, U. S. Atty., Indianapolis, Ind., Stephen Leonard, Asst. U. S. Atty., Anderson, Ind., for appellee.

Before DUFFY, Chief Judge, and MAJOR and FINNEGAN, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal from an order of the United States District Court for the Southern District of Indiana, Indianapolis Division, denying the petition of Carl DeCoster (hereinafter called plaintiff) for a writ of habeas corpus to be directed against P. J. Madigan, Acting Warden of the United States Penitentiary at Terre Haute, Indiana. D. M. Byington (hereinafter called defendant) has now succeeded P. J. Madigan as Acting Warden and has been substituted for him as a party defendant.

Plaintiff was a soldier in the regular army, serving with the Second Infantry Division in South Korea. On June 9, 1951, a general court-martial found him guilty of the murder of a Korean woman on March 16, 1951, a violation of the 92nd Article of War, and of the attempted rape of this same woman on or about the same date, a violation of the 96th Article of War.

During the court-martial the Law Officer instructed the court with respect to the penalty it could impose on the murder charge but said nothing as to the penalty which might be imposed for attempted rape. At that time the penalties were, for murder, death or life imprisonment as a court-martial might direct, and, for attempted rape, such punishment as a court-martial might direct, subject to a maximum of twenty years' imprisonment. Table of Maximum Punishments, Section A, Manual for Courts-Martial, United States, 1951. The court-martial sentenced plaintiff to life imprisonment.

It should be noted that on May 31, 1951, the Articles of War were superseded by the Uniform Code of Military Justice, 50 U.S.C.A. § 551 et seq., so that the substantive offenses with which plaintiff was charged were governed by the Articles but that the procedures for review of his sentence were those established by the Uniform Code.

On July 3, 1951, the Commanding General of the Second Infantry Division, the convening authority, approved the action of the court-martial and forwarded the record to the Judge Advocate General of the Army for review by a Board of Review in his office. On January 15, 1952, the Board of Review handed down its decision. It disapproved the murder conviction for lack of evidence, but approved the attempted rape conviction and decided that twenty years' imprisonment was the appropriate punishment therefor. On June 2, 1952, the United States Court of Military Appeals declined to consider plaintiff's Petition for Grant of Review. U. S. v. Fowler, DeCoster, 1 U.S.C.M.A. 713. In due course, plaintiff was transferred to the penitentiary at Terre Haute, where he is now confined.

The issue which was presented to the District Court and to this Court is whether, under the particular circumstances here involved, the action of the Board of Review in deciding upon the twenty year imprisonment was an error of law which can be considered and acted upon by a civilian court in a habeas corpus proceeding.

The power of the Federal courts to grant writs of habeas corpus is necessarily broad and comprehensive so that the writ will always be readily available to serve its historic purpose and to provide its fundamental protection. This power is subject to only one absolute limitation, that is, the statutory requirement that a Federal issue be involved in the alleged wrongful custody of a prisoner whose release is sought by habeas corpus. See 28 U.S.C.A. § 2241 et seq. Plainly, the power extends to a case wherein the prisoner seeking release is in custody pursuant to the action of a military tribunal. Gusik v. Schilder, 1950, 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146.

Notwithstanding the existence of the power, the decisions of the Federal courts disclose a marked reluctance on the part of civilian judges to interfere, save in compelling circumstances, with the determinations of military tribunals. Two basic principles underlie this judicial attitude. First, courts-martial together with their appellate agencies form a special type of judicial system which is part of the Executive branch and which is constitutionally independent of the Federal courts. Second, in the present Uniform Code of Military Justice, as in the former Articles of War and Articles for Government of the Navy, Congress has established strong safeguards for the rights of persons accused of offenses against military law.

Accordingly, the Federal courts have developed the general rule that the scope of a civilian court's review of military proceedings should be limited to a rather narrow area. A number of cases have laid down the strict but simple rule that a civilian court may look into only the elementary matters of a court-martial's jurisdiction of the person accused and the offense charged and its power to impose the sentence awarded. See In re Grimley, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636; Carter v. McClaughry, 183 U.S. 365, 22 S.Ct. 181, 46 L.Ed. 236; United States ex rel. Feld v. Bullard, 2 Cir., 290 F. 704, certiorari denied 262 U.S. 760, 43 S.Ct. 706, 67 L.Ed. 1220; Hiatt v. Brown, 339 U.S. 103, 70 S.Ct. 495, 94 L.Ed. 691. Other cases have announced the complementary rule that a civilian court may not review the merits of or re-evaluate the evidence presented in court-martial proceedings. See Mosher v. Hudspeth, 10 Cir., 123 F.2d 401, certiorari denied 316 U.S. 670, 62 S.Ct. 1039, 86 L.Ed. 1745; Whelchel v. McDonald, 340 U.S. 122, 71 S.Ct. 146, 95 L.Ed. 141.

Several recent cases, however, appear to have expanded the scope of review slightly, or, at least, to have shifted the emphasis from mere "jurisdiction" and "power," as the proper subjects for civilian court review, to broader considerations of the "fullness" and "fundamental fairness" of the court-martial proceedings. See Whelchel v. McDonald, supra; Kuykendall v. Hunter, 10 Cir., 187 F.2d 545; Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508; White v. Humphrey, 3 Cir., 212 F.2d 503. Finally, because a civilian court should not review errors which are or were capable of correction within the military judicial system, there is the rule which requires the exhaustion of a prisoner's administrative or military remedies before he petitions for a writ of habeas corpus. See Burns v. Wilson, supra; Easley v. Hunter, 10 Cir., 209 F.2d 483; Suttles v. Davis, 10 Cir., 215 F.2d 760, certiorari denied 348 U.S. 903, 75 S.Ct. 228, rehearing denied 348 U.S. 932, 75 S.Ct. 343.

In the light of these rules, the curious combination of circumstances involved in this case presents a situation which we think properly lies within the scope of a civilian court's review. While

the court-martial obviously had jurisdiction of plaintiff and the offenses with which he was charged, it did not fully and fairly deal with him. The Law Officer instructed the court-martial that the *minimum* sentence which could be imposed on the murder charge was life imprisonment. But the Law Officer gave no instructions as to the punishment which could be imposed on the attempted rape charge. The court-martial found plaintiff guilty of both murder and attempted rape, but its sentence was life-imprisonment, the minimum sentence for the murder charge alone. Of course, any suggestion that the court-martial should have sentenced plaintiff for a term of life plus twenty years would be ridiculous, but equally so is the assertion that the court-martial did or intended to impose any part of its sentence for attempted rape. It lacked even the necessary instructions upon which such award of punishment would have to be based. Imposition of sentence by the proper authority is an essential step in administration of criminal justice. Here, under the statute, only the court-martial was authorized to take this step; it failed to do so.

This crucial omission left open the door for the Board of Review, after disapproving the murder conviction and upon its own motion, to decide that twenty years was the appropriate sentence for attempted rape. We are unable to discern how this action can fairly be characterized as other than an original imposition of sentence by the Board. The court-martial imposed no such sentence, yet after the review of his case, plaintiff was confronted with a twenty year term. This action of imposing sentence was beyond the Board's authority because the statute grants it no such power. 50 U. S.C.A. § 653, U.C.M.J. art. 66.

■ Therefore, under the cases cited earlier in this opinion which lay down the rule that a civilian court can look into a court-martial's jurisdiction and power, the Board's action in imposing sentence was void. It is true that those cases dealt with unauthorized actions of courts-martial, but the principle they set forth is equally applicable to Boards of Review. Here, there was ample justification for a civilian court, without any reconsideration of the merits or re-evaluation of the evidence, to issue a writ of habeas corpus and to order plaintiff's discharge from custody.

Defendant does not disagree with the basic point, upon which our conclusion is largely predicated, that the Board of Review lacked power to impose sentence. Instead, defendant argues that the Board merely remitted that portion of the sentence which became excessive after disapproval of the murder conviction. To support this contention, defendant cites McKinney v. Finletter, 10 Cir., 205 F.2d 761, and points out the long-followed and well-recognized practice of courts-martial to impose a single gross sentence no matter how many charges and specifications there may be.

In the McKinney case, the Court of Appeals for the Tenth Circuit said, 205 F.2d at page 763:

> "* * * the imposition of a sentence in excess of that which the law permits does not render the authorized portion of the sentence void if the excess is separable from the residue and may be reached without disturbing the portion which is legal. [Citing cases.]"

The court proceeded to hold that the portion of the sentence "at hard labor" was beyond the jurisdiction of the court-martial and separated the hard labor provision from the sentence. It did not reduce the time prisoner was required to serve. There is, we think, a clear and substantial distinction between the McKinney case and those upon which it is based, and the instant case. There, the court-martial had authorized a sentence which was not excessive in length but only in conditions of punishment, and the non-excessive part thereof could stand. Here, on the other hand, the court-martial had authorized no punishment for attempted rape, and with the disapproval of the murder conviction, the entire pun-

ishment became excessive. There remained no legal separable residue.

■ We are not unmindful of defendant's point that plaintiff failed to exhaust his administrative or military remedies so as to bring his case within the scope of a civilian court's review; however, defendant fails to point to any remedy which plaintiff had and failed to exercise. True, the Court of Military Appeals appears to have had the authority to review the Board's action, and it is also true that plaintiff failed to raise before that tribunal the question here presented. It also appears that a review by that court was discretionary with it and that plaintiff was not entitled to such a review as a matter of right. More than that, if we are correct in our reasoning, the sentence now being served was void because it was imposed without authority by the Board of Review; the most which either that Board or the Court of Military Appeals could have done would have been to return the matter to the court-martial for imposition of sentence. In any event, any relief to which plaintiff might have been entitled is barred by the elapse of time.

It is, therefore, our conclusion that the sentence now being served by plaintiff is the result of a void commitment and that he is entitled to be discharged therefrom. Plaintiff having been discharged from the army, we need not stop to inquire whether the military authorities retained any jurisdiction over either the person of the plaintiff or the offense with which he was charged. Obviously, this holding is without prejudice to any right which the military authorities may have in the matter.

The order of the District Court is reversed and the cause remanded, with directions to grant a writ of habeas corpus and to discharge the plaintiff.

FINNEGAN, Circuit Judge (dissenting).

An unknown Korean female was admittedly subjected to a ruthlessly vicious sexual attack by the plaintiff DeCoster. He made a statement describing his reprehensible conduct in specific nauseating detail. Counsel for the prosecution and defense stipulated as to what the substance of a certain medical officer's testimony would be if he testified about his personal autopsy findings, made after examining the deceased Korean woman. Plaintiff also signed that stipulation made part of the general court-martial record, now before us. I am forced to adopt euphemistic style when recording an established factual element contained in that autopsy report, clearly showing consummation of the kind and type of conduct described by specification 2, set out below. At the outset I am confronted by the significance of DeCoster's situation in our court for he complains not of proof, nor attacks the adjudication of his guilt or innocence, but constricts his appeal only to the quantum and mode of his punishment. Consequently my narration of facts refers to evidence supplied by the plaintiff himself in his written statements and stipulation. Their relevancy, in my opinion, is obvious since they are the actual evidentiary materials received by, and presented to, the general court-martial that convicted DeCoster. In short, his confession, admissions and stipulation constituted a substantial portion of the prosecution's proof of specification 2 for which the general court-martial tried him.

My dissent, here, is predicated solely upon the grounds which follow.

Plaintiff and two other persons, members of the Armed Forces at that time, were tried together. Plaintiff was tried for and under:

"Charge: Violation of the 92d Article of War.

"Specification 1: In that Corporal Carl A. DeCoster, Headquarters, Headquarters and Service Company, 72d Tank Battalion, APO 248, did, at Chudong-ni, South Korea, on or about March 16, 1951, with malice aforethought, willfully, deliberately, feloniously, unlawfully, and with premeditation kill an adult Korean

female person whose name is unknown, a human being, by shooting her in the head with a pistol or carbine.

"Specification 2: In that Corporal Carl A. DeCoster, Headquarters, Headquarters and Service Company, 72d Tank Battalion, APO 248, did, at Chudong-ni, South Korea, on or about March 16, 1951, forcibly and feloniously, against her will, have carnal knowledge of an adult Korean female person whose name is unknown."

When the general court reached its verdict it reported, through its President, the following:

"Pres.: Corporal Carl A. DeCoster, it is my duty as president of this court to inform you that the court in closed session, and upon secret written ballot, two-thirds of the members present at the time the vote was taken concurring in each finding of guilty, finds you:

"Of Specification 1, guilty.

"Of Specification 2, guilty, except the word "have" substituting therefor the words, "attempt to have"; of the excepted words, not guilty, of the substituted words, guilty.

"Of the Charge as to Specification 1, guilty; as to Specification 2, not guilty, but guilty of a violation of Article of War 96."

The law officer's instruction, complained of by plaintiff, was given after presentencing procedures prescribed by the Manual for Courts—Martial, United States, 1951, Appendix 8a, pp. 520, 521. Before the general court retired a second time to deliberate, pursuant to military law, upon punishment, the law officer then stated to the court:

"LO.: Each accused stands convicted of Specification 1, violation of the 92d Article of War. The punishment on a conviction of the 92d Article of War must be either death or life. It cannot be other than those two sentences. This is provided in Manual for Courts-Martial 1949, page 296, 'Any person subject to military law found guilty of murder shall suffer death or imprisonment for life, as a court-martial may direct. The court will be closed.'"

After deliberating upon punishment the court returned and reconvened, in public hearing, at this time the President announced:

"Corporal DeCoster, it is my duty as president of this court to inform you that the court in closed session and upon secret written ballot, three-fourths of the members present at the time the vote was taken concurring, sentences you to be dishonorably discharged from the service, to forfeit all pay and allowances to become due after the date of the order directing execution of the sentence, and to be confined at hard labor at such place as proper authority may direct for the term of your natural life."

Upon examination of plaintiff's sentence and underlying record of trial a Board of Review concluded (United States v. Fowler, etc., et al., C. M. 347258, 2 CMR 336, 345):

"that the approved findings of guilty of Specification 1 of the Charge and the Charge are incorrect in law and fact and the same are set aside; that the approved finding of guilty of Specification 2 of the Charge and the approved finding of guilty of a violation of the 96th Article of War are correct in law and fact; and that only so much of the approved sentence as provides for dishonorable discharge, total forfeitures, and confinement at hard labor for 20 years is correct in law and in fact. The board of review having determined *upon the basis of the entire record* that the approved findings of guilty, except as thus set aside, and the approved sentence, as modified, should be approved as to each accused, such findings, except as thus set aside, and sentences, as modified are Affirmed."

A subsequent petition for review of that decision was denied, without opinion, by the United States Military Court of Appeals. United States v. Fowler, etc., et al., No. 681, 3 CMR 151, June 2, 1952.

Starting with Carter v. McClaughry, 1901, 183 U.S. 365, 22 S.Ct. 181, 46 L.Ed. 236 and continuously up to, and including McDonald v. Lee, 5 Cir., 1955, 217 F.2d 619, 622 it has been settled that a gross sentence imposed by court-martial for several charges is proper. Speaking for the McClaughry court, Id., 183 U.S. 393, 22 S.Ct. 192, Mr. Justice Fuller summarized in these words:

> "We understand the rule established by military usage to be 'that the sentence of a court-martial shall be in every case an *entirety*; that is to say, that there shall be but *a single sentence* covering *all* the *convictions on all the charges and specifications* upon which the accused is found guilty, however separate and distinct may be the different offenses found, and however different may be the punishments called for by the offenses.' 1 Winthrop, Military Law, 2d ed. p. 614.

> "Where, then, there is conviction of several offenses, the sentence is warranted to the extent that such offenses are punishable."*

Indeed, plaintiff endorses that proposition by a marginal note on page 5 of his brief, viz.:

> "It was entirely legal and proper for the court to fix one penalty in gross, to cover all of the counts or charges. The Manual for Courts Martial specifically authorizes that type of procedure and no other. The imposition of separate penalties for different counts or charges, either to run consecutively or concurrently is not authorized."

Actually the majority, here, are saying, in substance, that the general court martial did not sentence plaintiff for at-tempted rape even after particularly convicting him of that offense.

Before going further it should be noted that plaintiff's conduct, for which he was tried, took place on March 16, 1951 and the Manual for Courts-Martial, U. S. Army, 1949 was then in effect. His trial, June 8, 1951, followed the effective date May 31, 1951, of the Uniform Code of Military Justice, 54 Stat. 108, by nine days and review was had pursuant to that new Code. In fact the Board of Review, in the Office of the Judge Advocate General of the Army handed down its decision, already mentioned on January 15, 1952.

Article 66(c), Uniform Code of Military Justice, 64 Stat. 128; 50 U.S.C.A. § 653, describes and confers the reviewing power, involved, here as follows:

> "In a case referred to it, the board of review shall act only with respect to the findings and sentence as approved by the convening authority. *It shall affirm only such findings of guilty,* and the sentence *of such part or amount of the sentence,* as *it finds correct in law* and fact and *determines,* on the basis of the entire record, *should be approved. In considering the record it shall have authority to weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses."* (Italics added.)

That article has been construed as containing the Board of Review's power to reduce sentences. United States v. Kuth, 4 CMR 34, 43 (USCMA, 1952); United States v. Strong, 5 CMR 55, 56 (USCMA, 1952).

I view this case in its military setting and within such legal framework as Congress has prescribed for that establishment. Consequently, it is necessary to divest my civilian legal training and approach of that basic principle which inhibits civilian tribunals, above the trial

---

* "Entirety" is italicized in the original report, all other italicization has been supplied.

level, from reviewing or disturbing sentences imposed by trial judges. Because of the obvious fluid situations confronting military law administrators it is quite understandable why a board of review has power over sentences imposed by a general court martial. See, e. g., United States v. Jones, 3 CMR 36, 38 (USCMA, 1952). Indeed a general court-martial is a transitory body whose complement may be permanently dispersed and scattered around the globe shortly after verdict. Worthy of stress, here, is the fact plaintiff launches no challenges against jurisdiction or power of the general court which convicted him. Moreover, plaintiff admits (his brief, p. 8) the words contained in Article 66 " * * * only authorize the board to cut down or reduce penalties." Indeed, his counsel adds, "The natural meaning of that sentence is that the Board shall reduce a penalty if it is in excess of the maximum or if it is unnecessarily harsh". I would say that is just what the Board did here. Plaintiff has simply erected the structure of his claim for relief, in our court, by overlooking the military principles underlying gross sentences; that they are entire and single.

There is still another intriguing facet of the majority's disposition of this appeal. If plaintiff's sentence is void, that part of it providing a dishonorable discharge probably enjoys a like fate. Because there is nothing in this record to show whether the dishonorable discharge was imposed for murder or attempted rape; that prong of plaintiff's sentence was also imposed in gross. Accordingly, this brings into focus a question involving the validity of plaintiff's discharge and whether he is, indeed, separated from military service.

United States v. Keith, 4 CMR 34, 43 (USCMA, 1952) forces me to disagree with the majority on the helplessness of the military reviewing tribunals. In my opinion plaintiff's case did not have to be returned to the identical general court-martial.

Actually we are asked to review a dismissal for writ of habeas corpus. I think the trial judge acted correctly and would affirm him. We must remember that the United States Court of Military Appeals consists of three judges, 64 Stat. 129, appointed by the President of the United States, for a term of fifteen years and is a permanent part of the Military appellate system.

As the accused, plaintiff received (and acknowledged in writing) a notice given pursuant to the Uniform Code of Military Justice, Article 67(c), 64 Stat. 129, of his right to petition the Court of Military Appeals for a review of the Board of Review's decision, now subjected to attack in our court. At the Court of Military Appeals stage, plaintiff had civilian counsel who requested, according to an exhibit in the record, that an army appellate counsel submit DeCoster's brief in that court.

From my examination of the comprehensive petition for review, and brief, filed in the Court of Military Appeals it clearly appears that the proposition concerning punishment, of which plaintiff now complains, was not raised. Yet reduction of sentence is clearly mentioned on the face of DeCoster's petition and I think the following document is self-explanatory:

"In the United States Court of Military Appeals

| United States, Appellee, vs. Corporal Carl A. DeCoster, RA 16276366, U. S. Army, et al., Appellant. | Petition for Grant of Review Board of Review No. CM 347258. Docket No. ....... |

To the Honorable, the Judges of the United States Court of Military Appeals:

1. a. The accused having been found guilty of a violation of the 92d and 96th

Articles of War, and having been sentenced to dishonorable discharge, total forfeiture, and confinement for the term of his natural life on 9 June 1951, at Headquarters, 2d Infantry Division, APO 248, by General Court-Martial Orders Number 43, dated 3 July 1951, and said sentence having been approved by the convening authority, and the board of review having disaffirmed the finding of guilty of Article of War 92 and affirmed the finding of guilty of Article of War 96, *and having reduced the sentence* to twenty (20) years on 15 January 1952, hereby petitions the United States Court of Military Appeals for a grant of review of the decision of the board of review.

b. The accused requests appellate defense counsel be designated by The Judge Advocate General to represent him in association with his privately retained counsel named below, to the extent such privately retained counsel may desire.

> Allen Cain, Esq.,
> Central Block Building,
> Kaukaune, Wisconsin."

I remain unpersuaded that we should free plaintiff from federal custody. When the Board struck down DeCoster's conviction of murder they simply cast out an offense carrying mandatory life imprisonment, which sentence also embraced the punishment for attemped rape. Plaintiff was still legally convicted of this latter offense. Because DeCoster's conviction under the murder specification carried a mandatory sentence does not mean when it was imposed by the general court-martial that DeCoster was unpunished for attempted rape.

Speaking of Article 66 of the Uniform Code of Military Justice, 64 Stat. 128; 50 U.S.C.A. § 653, it was observed in United States v. Jones, 3 CMR 36, 38 (USCMA, 1952):

> "Again, included within the authority granted to the boards of review is the right to reduce the sentence if it should determine that any part is erroneous, excessive, or based on incompetent evidence, which had a tendency to increase the sentence. To interpret the acts more narrowly would defeat the intent clearly expressed by Congress as the entire record is the basis for determining the sentence which should ultimately be affirmed. The breadth of the grant encompassed post-finding errors as well as trial and pre-trial errors, and to narrow the limits to the extent that the reviewing authority could not effectively remove prejudice would tend to defeat one of the salutary provisions of the Code."

My views, here, coincide with those expressed by Mr. Justice Minton, concurring in the affirmance of judgment in Burns v. Wilson, 1953, 346 U.S. 137, 146, 73 S.Ct. 1045, 97 L.Ed. 1508, a case cited by the majority here. Actually DeCoster's petition, on review before us, specifically raises only a tenuous constitutional question regarding alleged *ex post facto* operation of Article 66. But that Article worked no substantive change in powers of Boards of review. Indeed, if Article 66 is defective on DeCoster's theory, then it would seem the Board of Review was powerless to set aside his murder conviction. Plaintiff attempts to avoid this *cul de sac* by urging Article 66 is defective as an *ex post facto* law, *only* because it did not afford him a new trial. See, e. g., Mallet v. State of North Carolina, 1901, 181 U.S. 589, 21 S.Ct. 730, 45 L.Ed. 1015.

DeCoster has failed or declined to raise the point concerning punishment, now pressed upon us, within the military appellate framework. Since I am satisfied that this case involves neither an illegal detention, deprivation nor impingement of constitutional rights as would warrant issuance of a writ of *habeas corpus*, I would affirm the judgment entered below.