**John A. BENNETT, Appellant,**

v.

**Colonel James W. DAVIS, Commandant, Colonel Raymond E. Jessen, Officer in Charge, United States Disciplinary Barracks, Fort Leavenworth, Kansas, Appellees.**

**No. 6039.**

United States Court of Appeals Tenth Circuit.

May 12, 1959.

J. L. Williams, Danville, Va., for appellant.

Wilbur G. Leonard, E. Edward Johnson, Topeka, Kan., and Peter S. Wondolowski, Washington, D. C., on brief for appellees.

Before MURRAH, LEWIS and BREITENSTEIN, Circuit Judges.

MURRAH, Circuit Judge.

This appeal is from an order dismissing a writ of habeas corpus after a full hearing. Petitioner, John A. Bennett, while serving with the United States Army in Austria, was convicted and sentenced to death for rape and attempted premeditated murder in violation of Articles 120 and 80, Uniform Code of Military Justice. 10 U.S.C. §§ 920, 880. Pursuant to the provisions of Articles 61, 64, 66 and 67(b) (1), Uniform Code of Military Justice, (10 U.S.C. §§ 861, 864, 866, 867(b) (1)) the conviction and sentence was approved by the Convening Authority, Judge Advocate General of the Army Board of Review, and that decision was affirmed by the United States Court of Military Appeals. United States v. Bennett, 7 USCMA 97, 21 CMR 223. Thereafter the President of the United

States, acting under the provisions of Article 71(a) of the Code (10 U.S.C. § 871(a)), approved the sentence and directed the execution under the order of the Secretary of the Army. While confined in the United States Disciplinary Barracks, Ft. Leavenworth, Kansas, he brought this application for a writ of habeas corpus, challenging the judgment and sentence on the ground that he was not adequately represented by counsel during his court-martial or during his military review; that his pre-trial statement was involuntarily obtained and improperly admitted in evidence; that his trial was conducted in an atmosphere of hostility, racial prejudice, and tension; and, that the court-martial was without jurisdiction to try him because Austria (where the alleged crime was committed) being a sovereign nation, had exclusive jurisdiction over his person and the offense charged.

■■ It is now settled beyond doubt that the scope of inquiry in habeas corpus cases of this kind is limited to whether the court-martial had jurisdiction of the person and the offense charged; and whether, in the exercise of that jurisdiction, the accused was accorded due process of law as contemplated and vouchsafed by the Uniform Code of Military Justice. We inquire only to determine whether competent military tribunals gave fair and full consideration to all of the procedural safeguards deemed essential to a fair trial under military law. Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508; Thomas v. Davis, 10 Cir., 249 F.2d 232, and cases cited.

■■ Acting within this scope of inquiry, the trial court found that none of the contentions with respect to adequacy of counsel, involuntary pre-trial statement, hostility and racial prejudice were raised at any stage of the proceedings in the military courts; and rightly held that the petitioner was thus precluded from presenting any of these issues in this collateral proceedings. And see Whelchel v. McDonald, 340 U.S. 122, 71 S.Ct. 146, 95 L.Ed. 141; Suttles v. Davis, 10 Cir., 215 F.2d 760. But even so, the trial court observed that the United States Court of Military Appeals had taken special note of the competency of petitioner's counsel, saying: "Defense counsel at trial, Captain James H. Boyle, defended with vigor and fidelity what was clearly a very difficult case. He conceded nothing, explored everything, was fully prepared on each issue, and made the most of what he had." United States v. Bennett, 7 USCMA 97, 102. And, the trial court went further to ascertain that when the issue concerning the voluntary nature of the pre-trial statement was raised in the military court, the law officer of the court advised the petitioner of his right to testify for the limited purpose of determining the voluntariness of his pre-trial statement, whereupon the petitioner elected to remain silent.

There is nothing in the record to indicate that the trial was conducted in an atmosphere of racial prejudice or tension, or which would deprive petitioner of the rudiments of a fair and impartial trial. Indeed, as far as we can ascertain, this suggestion was first made in the trial below and it comes too late. We agree with the trial court that the military court gave full and fair consideration to every constitutional safeguard contemplated by the Uniform Code of Military Justice.

■■ Petitioner challenges the jurisdiction of the court-martial on the ground that Austria was a sovereign nation and therefore had exclusive jurisdiction over the offense charged. But when this alleged offense was committed by the appellant on December 21, 1954, Austria was occupied by military forces of the Allied and Associated Powers,[1] as a part of conquered German Territory, and remained so until the Austrian State Treaty became effective on July

---

1. The Union of Soviet Socialist Republic, United Kingdom of Great Britain and Northern Ireland, United States of America, and France.

27, 1955.[2] And, in the absence of an executive agreement providing otherwise, i. e. see Wilson v. Girard, 354 U.S. 524, 77 S.Ct. 1409, 1 L.Ed.2d 1544, crimes committed in occupied foreign countries by members of United States Armed Forces are subject to military law and within exclusive jurisdiction of constituted military tribunals. Coleman v. State of Tennessee, 97 U.S. 509, 24 L.Ed. 1118; Dow v. Johnson, 100 U.S. 158, 25 L.Ed. 632. See also MacLeod v. United States, 229 U.S. 416, 33 S.Ct. 955, 57 L. Ed. 1260; Dorr v. United States, 195 U.S. 138, 24 S.Ct. 808, 49 L.Ed. 128; Jacobi v. United States, 10 Cir., 257 F.2d 184; William E. Birkhimer, Military Government & Martial Law, 3rd Ed.; "Jurisdiction Over Forces Abroad", 70 Harv.L.R. 1043.

Article 2 of the Uniform Code, 10 U.S. C. § 802, provides that "All persons belonging to a regular component of the armed forces * * *, all inductees from the time of their actual induction into the armed forces of the United States * * *" are subject to the Uniform Code of Military Justice. And, Article 5 of the Code, 10 U.S.C. § 805, provides that "this code shall be applicable in all places." Petitioner concedes that at the time of the offense and the court-martial, he was a soldier in the United States Army stationed in Austria. As such, petitioner was amenable not to the criminal laws of the occupied state, but to the laws of the occupying state. It follows that the court-martial had jurisdiction over the person and the offense charged, and that petitioner was afforded a fair trial in accordance with due process of military justice. The judgment is affirmed.

2. 6 United States Treaties and Other International Agreements 2408, T.I.A.S. No. 3298. Under this treaty the Allied and Associated Powers declared the annexation of Austria by Germany on March 13, 1938, as null and void and established a free and independent state. Article 38 of the treaty provided that the treaty would come into effect when all ratifications thereof by the signatory and acceding States, were deposited with the Government of the Union of Soviet Socialist Republic. Instruments of ratification were deposited with the Government of the Union of Soviet Socialist Republic by Austria on June 14, 1955; United States of America on July 9, 1955; United Kingdom of Great Britain and Northern Ireland on July 19, 1955; and France on July 27, 1955.