Leon B. RUSHING, Appellant,

v.

Frederick T. WILKINSON, Warden, United States Penitentiary, Atlanta, Georgia, Appellee.

No. 17727.

United States Court of Appeals
Fifth Circuit.

Nov. 25, 1959.

Frank J. Mizell, Jr., Montgomery, Ala., John Fletcher Jones, Andalusia, Ala., for appellant.

Charles D. Read, Jr., Acting U. S. Atty., Atlanta, Ga., Lieutenant Colonel Thomas M. Wells, Jr., First Lieutenant Paul A. Foley, Fort McPherson, Ga., for appellee.

Before RIVES, Chief Judge, and HUTCHESON and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

Leon B. Rushing, formerly a private in the United States Army but now an inmate of the United States penitentiary in Atlanta, filed a petition for habeas corpus challenging the validity of his conviction by a court-martial in Korea in 1951. Rushing contends that: (1) he was denied effective assistance of counsel in the preparation and trial of his case, in violation of the Sixth Amendment and, interrelated with this denial of adequate counsel, he was not afforded an opportunity to prepare his defense properly, contrary to due process; (2) the instructions of the law member of the court failed to satisfy the requirements of due process; (3) the court-martial verdict was inconsistent and invalid

in that he was found guilty of the joint offense of murder, although the court found that Floyd Stewart, jointly-accused, was not guilty; and, (4) his confession was coerced, in violation of his rights under the Fifth Amendment.

The hearing in the district court on the rule to show cause developed into a head-on collision of testimony between the two persons most interested in the outcome of the proceedings: Rushing, of course, and Rushing's appointed counsel in Korea, Lieutenant Colonel Henry E. White (Retired). The district court chose to believe Colonel White and denied the application for habeas corpus. We affirm.

On March 30, 1951, Rushing and another soldier, Floyd Stewart, were on a work detail near the village of Oh Ryu Dong on the Seoul-Inchon Road, Korea. It was cleaning day in the village. Oh Hyon Bun, a Korean girl living with her father in Oh Ryu Dong, was carrying garbage to her garden gate when she looked up and saw Stewart entering the garden. She fled to the back of the house. Rushing was climbing through a hole in the back fence. She ran to the front of the house. There, her father, Oh Yun Dong, was confronting Stewart. Rushing swung at the father with his M-1 rifle, just missing him. Stewart kicked Oh Yun Dong from behind. Rushing swung again with the butt of his rifle. Oh Yun Dong then beat a retreat in search of a policeman. After the father was driven away, Stewart began struggling with the girl, struck her in the face, grasped her by the throat, and attempted to remove her clothing.

During Stewart's assault on the girl Rushing was standing nearby armed with his rifle, apparently as a look-out or to prevent the father returning. The father found a Korean policeman, Cho Cuck Whan, who approached the house. He fired one or two shots in the air. Hearing these shots, Rushing went to the back of the house. The girl heard two more shots. After a few moments, Rushing and Stewart left the scene. Oh Yun Dong had been hiding for about ten minutes. After hearing the shots he returned home. On looking in the outhouse, he found Cho Cuck Whan bleeding to death. Medical reports showed that Cho Cuck Whan died as a result of excessive bleeding from gunshot wounds in the chest and left arm. Those are the facts, according to the prosecution.

A few hours later CID agents picked up Rushing and Stewart for investigation. Both made written statements that evening at the Inchon police station confessing to most of the allegations constituting the basis for the charges. In his statement Rushing said that he saw a rifle muzzle pointed at him, whereupon he jumped back, then, the gun which he was holding at his hip went off; he "didn't do it on purpose".[1]

On May 12, 1951 Rushing and Stewart were charged jointly with premeditated murder, in violation of Article of War 92 (formerly 10 U.S.C.A. § 1564).[*] They were also charged with aggravated assault upon Oh Yun Dong with a dangerous weapon and assault upon Oh Hyon Bun with intent to commit rape, both offenses in violation of Article of War 93

---

1. The Board of Review, in its opinion, commented: "At the trial he offered no evidence justifying or excusing his act. Although from a portion of his statement there is an indication that Rushing considered the shooting accidental, no evidence was presented to substantiate this theory and, from accused's entire statement and the other evidence, we are constrained to reject this possibility. Accused stated that after momentarily looking to his rear for Stewart, he turned around, saw the rifle and 'that's when I fired.' This indicates that he knowingly discharged the weapon, which from the results produced had apparently been directly aimed at the policeman. The fact that three bullet holes were found in the victim's body (although one might be a point of exit) further negates an accidental shooting inasmuch as an M-I rifle although containing an automatic feed for each round, is not so constructed as to encompass automatic firing (See pars. 2, 23, 32, FM-23-5, U.S. Rifle, Caliber .30, MI, rev. 30 July 1943)."

* Now 10 U.S.C.A. § 918.

(formerly 10 U.S.C.A. § 1565).** Each pleaded not guilty. They were tried by court-martial May 22, 1951. Each took the stand for the limited purpose of testifying as to the involuntary nature of the confession. Rushing was found guilty of premeditated murder; Stewart was found not guilty. Each was found guilty of the other two joint offenses, except that the element of battery was eliminated in the finding as to aggravated assault. The court-martial sentenced Rushing to dishonorable discharge, total forfeiture of pay and allowances, and life imprisonment at hard labor. Stewart was sentenced to dishonorable discharge, total forfeiture of pay and allowances, and twenty years at hard labor.

In an exhaustive review of the case the Staff Judge Advocate affirmed the conviction. He recommended, however, that Rushing's term of confinement be reduced from life to twenty years and that Stewart's sentence be reduced from twenty years to ten years. As to the murder charge, he disapproved of that portion of the findings containing Stewart's name and any words indicating that the offense was a joint one. The convening authority accepted these recommendations.

The Board of Review in the office of the Judge Advocate General of the Army reviewed the record and wrote a carefully documented opinion. United States v. Rushing, 1 CMR 328 (1951). The Board approved the finding that Rushing was guilty of murder, but held that the evidence was legally insufficient to support the finding that the killing was premeditated. The Board approved as correct in law and fact the findings of assault with intent to do bodily harm and assault with intent to rape.

The United States Court of Military Appeals denied a petition for review. United States v. Rushing and Stewart, 4 CMR 173, 1 USCMA 716 (1952). Rushing did not request a new trial. 50 U.S.C.A. § 740.

## I.

The appellant argues that he was denied effective assistance of counsel in violation of the Sixth Amendment, and, interrelated with this denial of adequate counsel, he was not afforded an opportunity to prepare the defense of his case, contrary to due process. He alleges that he was forced to have as his counsel the same person appointed as counsel for his co-defendant, irrespective of the conflicting interests of co-defendants accused of joint offenses. He alleges also that he requested individual counsel to aid him, but this was refused; that the appointed counsel saw him only once before the day of the trial, and then for fifteen minutes, and next saw him only five minutes before the trial; that his counsel had promised to come and discuss the case, but he never did so; that, despite his request that counsel ask for a separate trial, counsel failed and refused to do so; that the record of the trial is replete with circumstances showing a lack of preparation and effective assistance of counsel. Rushing was eighteen years old at the time of the offense. He had a seventh grade education.

Rushing's counsel was Lieutenant Colonel, then Captain Henry K. White, an officer in the Judge Advocate General's Corps. Captain White was graduated in law from Wake Forrest, an accredited law school, was admitted to practice in North Carolina in 1932, and had engaged in the general practice of law in North Carolina for eight years. He testified that during his military career he had taken part in several thousand courts-martial and, at the time he defended Rushing, had represented defendants in ten or twelve murder cases in Korea.

The district judge took the position that he would entertain "all of the efforts offered by the petitioner in his efforts to show that Captain White was not a sufficiently skilled attorney to comply with the requirements of due process as to counsel", Suttles v. Davis, 10 Cir., 1954, 215 F.2d 760, certiorari denied, 348

** Now 10 U.S.C.A. §§ 920, 928.

U.S. 903, 75 S.Ct. 228, 99 L.Ed. 709, to contrary notwithstanding.[2] The district judge found that a study of the record of the court-martial shows that "Captain White did represent petitioner in an able manner"; that petitioner failed to prove his contentions relating to matters outside of the record.

Rushing testified that he requested other counsel than White, a Major Richard Batley of the 378th Engineer Combat Battalion. But Major Batley's commanding officer turned down the request because of the tactical combat situation at the time. Further, the request was for Major Batley to assist Captain White, not to serve as chief counsel. The record shows that upon inquiry in open court Rushing stated that he desired to be defended "by the regularly appointed defense counsel", and that, later on, he expressed satisfaction with Captain White as his counsel. The opinion of an eighteen-year-old soldier under the strain of a murder charge is scant evidence of an attorney's competency, but it does tend to refute Rushing's complaint that White disregarded various requests and suggestions made by the petitioner before and during the trial.

The conflict in testimony is irreconcilable. The petitioner testified that: (1) Captain White did not allow him to plead self-defense; (2) he was not permitted to testify because his testimony "would hurt Stewart"; (3) Captain White did not call various witnesses who would testify that his confession was coerced; (4) he did not challenge any members of the court-martial; (5) Captain White saw him for only fifteen minutes on May 12, and then saw him later, on the day of the trial for only five minutes; (6) a notice was read to Rushing's company in which the alleged offense was referred to as a "vicious attack".

White answered these accusations as follows:

(1) He stated that he did not urge self-defense, because the facts would not support such a defense.

(2) He stated that he conferred with Rushing and both agreed that it would be better not to have Rushing take the stand.

(3) With respect to the production of witnesses the district court found:

"* * * When the court inquired of petitioner the names of the witnesses referred to, he stated they were MacDougald, Davis and one Sergeant Foote. This case has been set down for trial on several occasions by this Court and continued at the request of movant who has had ample time to obtain testimony as to some or all of these witnesses to the effect that the confession was coerced. Petitioner himself has introduced in evidence and admitted by the court a letter from witness MacDougald who was requested to give an affidavit along the lines suggested but who declined to do so stating that the record would show the facts, none by him. There is no testimony by Davis or Sergeant Foote along the lines contended for by petitioner. This Court, therefore, cannot find any error upon the part of Captain White in failing to produce the said witnesses."

(4) White testified that there was no basis for challenging any member of the court-martial. No basis was suggested in the trial below.

(5) White agreed that he saw Rushing for only fifteen minutes on May 12, 1951. Rushing had been brought under guard to a place where White was engaged in another court-martial. He ex-

2. "The trial court properly found that the alleged inadequacies of counsel could have been but were not raised in the military courts and may not therefore be considered when presented for the first time in the application of habeas corpus. The civil courts may review only claims of infringement of constitutional rights which the military courts refused to give fair consideration. Burns v. Wilson, infra. Obviously, it cannot be said that they have refused to fairly consider claims not asserted." Suttles v. Davis, 10 Cir., 215 F. 2d 760, 763.

cused himself from the trial, conferred with Rushing, and arranged an appointment for another meeting. White testified that a few days later he went with Rushing to the scene of the alleged offense where they spoke with Oh Hyon Bun and her father. White insisted that he had an adequate conference with Rushing just before the trial of the case. He said also that he saw various witnesses at headquarters, that he talked with the two CID agents who had investigated the case, and that he spoke with the Company Commander and others.

(6) White stated that he had never heard of any notice being brought to the attention of the company regarding the alleged offense.

■ Counsel for the appellant found twenty-six instances of Captain White's alleged inadequacy as counsel for appellant. Some of these are clearly unfounded. Many are contradicted by White. Some involve a question of judgment. The testimony is in hopeless conflict. Considering the evidence in the record, we cannot say that the district court was clearly erroneous[3] in holding that appellant was furnished "adequate and competent counsel". See Altmayer v. Sanford, 5 Cir., 1945, 148 F.2d 161; Romero v. Squier, 9 Cir., 1944, 133 F.2d 528, certiorari denied 318 U.S. 785, 63 S.Ct. 982, 87 L.Ed. 1152.[4]

## II.

The appellant contends that the instructions of the law member in open court were so inadequate as to fail to meet the requirements of due process. In particular, the appellant argues that there was no definition of the offenses charged and a complete lack of any reference to the lesser offenses included in the offenses charged.

■ The trial procedure in petitioner's case was governed by the Manual for Courts-Martial, United States Army, 1949 (3 CFR, 1948 Supp., p. 251) and the former Articles of War (formerly 10 U.S.C. §§ 1472–1593). The Uniform Code of Military Justice (10 U.S.C. §§ 801–940) and the Manual for Courts-Martial, United States Army, 1951 (3 CFR, 1951 Supp., p. 90) governed only the review of the case and the appellate process undertaken after May 31, 1951. (Sec. 5, Act of May 5, 1950, 64 Stat. 145, 50 U.S. C.A. note preceding § 551; Executive Order No. 10214, Feb. 8, 1951, 3 CFR, 1951, Supp., p. 90; see also United States v. Merritt, 1 USCMA 56, 1 CMR 56 (1951).

The record of trial by court-martial shows that First Lieutenant Malburn N. Washburn, an officer of the Judge Advocate General's Corps, served as law member at petitioner's trial, as required by Article of War 8 (41 Stat. 788, as amend-

3. Rule 52(a), 28 U.S.C., applies to findings of fact of a district court in a habeas corpus proceeding. Davis v. Johnston, 9 Cir., 1946, 157 F.2d 64; Farrell v. Lanagan, 1 Cir., 1948, 166 F.2d 845.

4. This was not a case in which there was a headlong rush to trial. On May 2, 1951, a pretrial investigation of the charges preferred against appellant was held, as required by Article of War 46, subd. b (62 Stat. 633; formerly 10 U.S.C. § 1517), now 10 U.S.C.A. § 832. Major Francis J. Prima, who performed the required investigation, included the following statement in his report: "At the outset of the investigation I informed the accused of the nature of the charges alleged against him * * *." Further, on May 12, 1951, a copy of the charge sheet containing the specifications and charges was served on appellant, as evidenced by the certificate to that effect signed by First Lieutenant Rawls H. Frazier, Trial Counsel, on the charge sheet. Article of War 46, subd. c (62 Stat. 633; formerly 10 U.S.C. § 1517) now 10 U.S.C.A. § 832, required that in time of peace no person could be brought to trial over his objection, within a period of five days subsequent to the service of charges upon him. Appellant was tried by court-martial on May 22, 1951, at a time when a state of war clearly existed in Korea (see U. S. v. Bancroft (No. 1139), 3 USCMA 3, 11 CMR 3 (1953)), but nevertheless some twenty days before trial and again ten days before trial appellant was informed of the charges upon which he would be tried.

ed, 62 Stat. 628; formerly 10 U.S.C. § 1479).* The duties of the law member, as set forth in paragraph 40, Manual for Courts-Martial, United States Army, 1949 (3 CFR, 1948 Supp., p. 272), were:

" * * * to rule upon interlocutory questions, to advise the court on *question of law and procedure which may arise in discussions in closed session. Such advice may include an explanation as to the elements necessary to establish the offense charged, what lesser offenses, if any, are included* in the offenses charged, the possible findings the court may make by way of exceptions and substitutions, the maximum punishment for each offense with which accused is charged, and if requested the proper form in which to state the findings and sentence reached by the court. As a member he has the duties, powers and privileges of members in general. In accordance with *Article 31, it is the duty of the law member before a vote is taken to advise the members in open court concerning the presumption of innocence and the nature and quantum of evidence required to sustain findings of guilty.*" (Emphasis added.)

In accordance with this provision, the law member instructed the other members of the court on the elements of the offenses charged and on the lesser included offenses, as occasion required, only during the closed deliberations (unrecorded) on the findings. The only instructions required to be given in open court were those set forth in the then recently amended Article of War 31 (62 Stat. 631–632; formerly 10 U.S.C. § 1502).** These instructions were given in the instant case.

The same contention was made in White v. Humphrey, 3 Cir., 1954, 212 F. 2d 503. In that case the court held that the instructions in *open* court, identical with those given in the instant case, complied with the controlling court-martial law. Under the 1949 Courts-Martial Manual an essential part of the duty of the law member of the court was to advise the lay members on "questions of law and procedure which may arise in discussions in *closed* session".[5] Similarly, Dixon v. United States, 10 Cir., 1956, 237 F.2d 509 held that failure of the law member to give detailed instructions in open court was not a denial of due process.

■ Under the old Courts-Martial Manual the law member was not a judge. He was a member of a body that functioned in part as a jury. He participated in the deliberations of that body in closed sessions and it was his duty in those sessions to keep the Court properly in-

---

* Now 10 U.S.C.A. § 826.

** Now 10 U.S.C.A. § 851.

5. "[W]e are confronted with one of the harsh realities of courts-martial prior to the sweeping changes brought about by the Code. * * * Nevertheless we are forced to conclude that under the court-martial law which governed the trial the law member's instruction was adequate. We cannot therefore interfere on that score. * * * With reference to instructions by the law member all that is disclosed is merely the open court instruction. As has already been indicated that complied with the controlling court-martial law. We have no knowledge of the advice, if any, given by the law member to the court in its closed session. Nor is there any information available as to the knowledge of the court-martial members regarding matters on which no open instruction was furnished. We cannot assume that if the court or one or more members thereof needed explanation '[a]s to the elements necessary to establish the offense charged, what lesser offenses, if any, are included in the offense charged' or on any other '[q]uestions of law and procedure which may arise in discussions in closed session' this was not supplied by the law member, especially since that was part of his principal duty under Paragraph 40 of the 1949 Courts-Martial Manual. We have been referred to no decisions prior to the Code of Military Justice nor have we ourselves found any where the kind of instruction complained of was held erroneous." White v. Humphrey, 3 Cir., 1954, 212 F.2d 503, 506, 507.

formed on the law. We cannot find that the law member's open court instructions in this case, given exactly as required in the Courts-Martial Manual, prevented appellant obtaining a fair trial.

### III.

The appellant contends that the verdict of the court-martial was inconsistent and void in that Rushing was found guilty of the joint offense while Stewart was found not guilty.

Paragraph 78c, Manual for Courts-Martial, U. S. Army, 1949 (3 CFR, 1949 Supp. p. 296), in effect at the time of this trial, prescribed the manner in which the findings were to be announced when two or more accused were jointly charged and one or more was acquitted and the other convicted:

"Any different findings as to two or more joint accused should be consistent with one another. When one of two joint accused is found not guilty and the other is found guilty, the name of the former as well as the words indicating a joint offense should be eliminated from the specification by the finding as to the latter. * * *"

■ Appellant was charged with a joint offense, as distinguished from conspiracy, and the words alleging joint participation did not constitute an element of the offense. United States v. Dolliole (No. 2004), 3 USCMA 101, 11 CMR 101 (1953). The presence of such words in the court's findings of guilty of murder amounted to mere surplusage. The failure of the court-martial to except them was only a minor procedural error which did not effect the substantial rights of appellant.

The Staff Judge Advocate noted the court's error in failing to except the words, "Private First Class Floyd R. Stewart, Company C, 14th Engineer Battalion," and "acting jointly and in pursuance of a common intent," from the murder specification, and accordingly

recommended to the convening authority that they be disapproved. The convening authority cured the defect by disapproving these words indicating a joint offense in the findings of guilty of murder.

In correcting the court's error the convening authority took the action prescribed under Article 64, Uniform Code of Military Justice (50 U.S.C.A. § 651),* which provides:

"In acting on the findings and sentence of a court-martial the convening authority shall approve only such findings of guilty, and the sentence or such part or amount of the sentence as he finds correct in law and fact that as he in his discretion determines should be approved. * * *"

Article 59(a), Uniform Code of Military Justice (50 U.S.C.A. § 646)** provides:

"(A) A finding or sentence of a court-martial shall not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused."

In this connection, Paragraph 87c, Manual for Courts-Martial, United States, 1951 (3 CFR, 1951 Supp. p. 172) provides in pertinent part:

"Article 59, taken together with Article 64, vests a sound legal discretion in the convening authority to the end that substantial justice may be done. The effect of a particular error within the purview of Article 59, should be weighed by him in the light of all the facts as shown by the record and, unless it appears to him that the substantial rights of the accused were materially prejudiced, he should disregard the error as a basis for concluding that the findings of guilty of a particular offense should be disapproved."

■ The military court and reviewing authorities have considered the alleged error, corrected it, and concluded

---

* Now 10 U.S.C.A. § 864.

** Now 10 U.S.C.A. § 859(a).

that it was not such an error as to prejudice Rushing's substantial rights. This was properly a question for fair consideration by the military courts. We too have considered it, however. We agree with the military courts.

## IV.

■■ The question of admissibility of the confession involves an evaluation of the evidence. Such evaluation does not go to jurisdiction, the only issue in habeas corpus proceedings, the only issue at least when the military court's evaluation is not so unreasonable as to shock one's sense of justice. Whelchel v. McDonald, 1950, 340 U.S. 122, 71 S.Ct. 146, 95 L.Ed. 141. Here the voluntariness of the confession was considered by the court-martial during the course of the trial, by the Staff Judge Advocate, by the convening authority, by the Board of Review in the office of the Judge Advocate General, and by the United States Court of Military Appeals. Nothing was brought out in the trial before the district court that was not considered by the military courts. We can find no good reason for asserting any fancied superior insight on our part in evaluating the facts relating to the voluntariness of the confession.

## V.

Implicit in the vigorous argument of counsel for the appellant is the assumption that the scope of collateral review of a military trial should be as broad as the scope of collateral review of a civilian trial.[6] A strong case may be made to show a trend in that direction.[7] United States ex rel. Toth v. Quarles, 1955, 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8; Reid v. Covert, 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148; Easley v. Hunter, 10 Cir., 1953, 209 F.2d 483; De Coster v. Madigan, 7 Cir., 1955, 223 F.2d 906. "[I]t is an intolerable principle that 'a conviction by a constitutional court which lacked due process is open to attack by habeas corpus while an identically defective conviction when rendered by an *ad hoc* military tribunal is invulnerable,' and yet that is where we would be if the doctrine of Johnson v. Zerbst [304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461] were ultimately and authoritatively held inapplicable to military trials. Leyra v. Denno [347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948] teaches that full review of a claim of constitutional right in a state court is no bar to collateral review of the claim in a subsequent federal habeas corpus proceeding. Why then should it be a defense to such a proceeding that the military authorities have considered but denied a claim of constitutional right, as was held by the prevailing opinion in Burns v. Wilson?" Weiner, Courts-Martial and The Bill of Rights, 72 Harv.L.Rev. 266, 303 (1953). Nevertheless, as pointed out by Aycock and Wurfel in their treatise on Military Law (U. of N. C. 1955), p. 371, "the record of the Supreme Court of never having sanctioned the granting of a writ of habeas corpus in a military case on due process, as distinguished from jurisdictional grounds, remains intact". " 'The single inquiry, the test, is jurisdiction.' * * * The correction of any errors [the court martial] may have committed is for the military authorities which are also authorized to review its decision." Hiatt v. Brown, 1950, 339 U.S. 103, 111, 70 S.Ct. 495, 499, 94 L.Ed. 691. This language used in Hiatt v. Brown is almost identical with the language of the Court many years earlier, in Ex parte Reed, 1879, 100 U.S. 13, 23, 25 L.Ed. 538.

In Burns v. Wilson, 1953, 346 U.S. 137, 73 S.Ct. 1045, 1047, 97 L.Ed. 1508,[8] the

---

6. The statute makes judgments of courts-martial "final". 10 U.S.C.A. § 876 (Supp. IV, 1957).

7. See Henderson, Courts-Martial and the Constitution; The Original Understanding, 71 Harv.L.Rev. 209 (1957) and Weiner, Courts-Martial and the Bill of Rights; The Original Practice 72 Harv.L.Rev. 1,-

266 (1958); Comment, 67 Harv.L.Rev. 161 (1952).

8. In Burns v. Wilson the Supreme Court affirmed the judgment of the Court of Appeals, but only four justices agreed on the proper approach. Only Justice Minton adhered to the principle that the scope of review should be restricted to

justices writing the prevailing opinion approved Hiatt v. Brown, and stated:

"But in military habeas corpus, the inquiry, the scope of matters open for review, has always been more narrow than in civil cases * * * The military courts, like the state courts, have the same responsibilities as do the federal courts to protect a person from a violation of his constitutional rights. In military habeas corpus cases, even more than in state habeas corpus cases, it would be in disregard of the statutory scheme if the federal civil courts failed to take account of the prior proceedings—of the fair determinations of the military tribunals after all military remedies have been exhausted. Congress has provided that these determinations are 'final' and 'binding' upon all courts. We have held before that this does not displace the civil courts' jurisdiction over an application for habeas corpus from the military prisoner. Gusik v. Schilder, 1950, 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146. But these provisions do mean that when a military decision has dealt fully and fairly with an allegation raised in that application, it is not open to a federal civil court to grant the writ simply to re-evaluate the evidence. Whelchel v. McDonald, 1950, 340 U.S. 122, 71 S.Ct. 146, 95 L.Ed. 141. * * * it is not the duty of the civil courts * * * to re-examine and reweigh each item of evidence of the occurrence of events which tend to prove or disprove one of the allegations in the applications for habeas corpus. It is the limited function of the civil courts to determine whether the military have

given fair consideration to each of these claims."

The Court indicated also that it would not consider an issue not raised but "available for exploration at the [military] trial".

We have examined closely the record in the military trial and in the habeas corpus hearing, erring, if it is error, on the appellant's side of questioning how much consideration the military courts gave to the issues before them. To the extent it is proper for this Court to review the military courts, in the light of Burns v. Wilson, we conclude that Rushing had a fair trial.

Judgment is

Affirmed.

questions of formal jurisdiction. Justice Jackson conferred in the result. Chief Justice Vinson and Justices Reed, Burton, and Clark, recognized the broad jurisdiction of federal courts to protect against the invasion of constitutional rights, but denied the propriety of reviewing questions "fully and fairly" considered by the military courts. Justices Black and Douglas advocated a scope of review almost all as broad for military cases as for civil cases. Justice Frankfurter took a middle ground, suggesting reargument because the issues were not explored in all their far-reaching significance.