UNITED STATES, Appellee

v

HANS A. ROLAND, Master Sergeant, U. S. Army, Appellant

9 USCMA 401, 26 CMR 181

*Vincent P. McCauley, Esq.*, and *Captain John F. Christensen* argued the cause for Appellant, Accused. With them on the brief was *William C. Irby, Esq.*

*Major Thomas J. Nichols* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel John G. Lee* and *First Lieutenant Chester F. Relyea.*

## Opinion of the Court

HOMER FERGUSON, Judge:

The events giving rise to this appeal occurred at the lower appellate level. After conviction and sentence by the court for certain violations of the Uniform Code of Military Justice, the accused was transferred to the disciplinary barracks at Fort Leavenworth, Kansas, for commencement of his term of confinement. The board of review in a short form opinion dated May 21, 1956, affirmed the decision of the court but modified the punishment.

Several days after the board of review opinion the defense counsel, who had represented the accused at trial, received a letter from the assistant legal officer at Fort Leavenworth enclosing certain psychiatric data on the accused obtained as a result of an examination by a board of medical officers at the disciplinary barracks. The assistant legal officer recommended that the defense counsel request a reconsideration by the board of its prior decision in the light of the additional information. No question of the accused's mental condition was raised as a defense at the trial. The defense counsel duly petitioned the board for its reconsideration supporting its request with the following report on the accused:

"1. DIAGNOSIS: Mental deficiency, primary, approximate mental age of 7 years 9 months. (Psychometric Test used was the Wechsler Adult Intelligence Scale.) Profile S4.

Stress: None
Predisposition: Undetermined.
Incapacity: Marked.

"2. That the accused at the time of the alleged offenses was not so far free from mental defect, disease or derangement as to be able to completely distinguish right from wrong.

"3. That the accused at the time of the alleged offenses was not so far free from mental defect, disease or derangement that his ability to adhere to the right was severely impaired.

"4. That the accused at the time of the trial did not possess sufficient mental capacity to understand the nature of the proceedings against him, and intelligently to conduct or cooperate in his own defense.

"5. That the dishonorable discharge has not been executed.

"6. That the available records on the prisoner indicate that no psychiatric examination was performed prior to the trial and the issue of mental deficiency was not raised during the trial.

"7. That the accused can be discharged into his own custody without danger to himself or others."

Government counsel forwarded this psychiatric report to The Surgeon General for his consideration. Contained within the Government's brief opposing the relief requested by defense was the review of The Surgeon General regarding the report of the accused. The report contained the following:

"It is accepted medical opinion that mental responsibility cannot be arbitrarily attached to a particular

score on a psychological test, rather the total performance of the individual must be considered. Many examples can be found of illiterate individuals with IQ scores in the mental deficiency range who have been able to function quite adequately in relation to the demands of society, both in the service and in civilian life. The present case is one in point. The subject prisoner although illiterate and possessing a score of 65 on the Wechsler Adult Intelligence Scale was able to enter the Army, serve 14 years, marry an educated woman, and rise to the rank of M/Sgt. The presumption must be made in such a case that a certain shrewd sophistication exists in this man that was not detected by his examiners. This prisoner was able to distinguish right from wrong quite successfully for 14 years in an environment which has strenuous standards in this respect. It is therefore the opinion of The Surgeon General that:

a. The accused was so far free from mental defect, disease, or derangement at the time of offense and trial to be able to distinguish right from wrong.

b. The accused was so far free from mental defect, disease or derangement at the time of offense and trial to be able to adhere to the right.

c. The accused at time of trial did possess sufficient mental capacity to understand the nature of the proceedings against him and intelligently to conduct or cooperate in his defense."

The board of review reconsidered its prior opinion based upon the additional evidence presented and concluded the following:

"In view of all the evidence of record, and the allied papers, including the report of the medical board and the extra judicial opinion of The Surgeon General, this Board of Review is of the opinion that the errors assigned by the defense appellate counsel in his motion for reconsideration concerning the mental responsibility of the accused are without

merit. It is inconceivable that a soldier could continue to serve apparently satisfactorily for over ten years in the Army and attain the grade of Master Sergeant and be unable to understand the nature of the trial proceedings against him and to intelligently cooperate in his own defense. His defense counsel at the trial apparently noted no such mental deficiency on his client's part as to cause him to make inquiry or to raise the issue at the trial. The Board of Review notes also that the accused, for some time prior to the instant trial, had been serving as First Sergeant of Headquarters and Service Company of an engineer battalion—a position requiring considerable judgment and ability. Further, some of the charges in this case arose out of his earlier trial by general court-martial, in which accused's own testimony was so convincing that he was acquitted. It is noted that although the accused has no previous convictions, he has been previously tried by general courts-martial three times within the current enlistment, and each time he was acquitted. An examination of the records of trial in these cases notably fails to substantiate appellant defense counsel's claim."

The board again affirmed the sentence and conviction of the accused as modified in its prior opinion of May 21, 1956.

After a long appellate history of briefs and motions before this Court, including a motion to dismiss by Government counsel for untimely filing, which was denied, we granted a petition for review on the sole issue of whether the board of review erred in its procedures on and its determinations of the issues concerning sanity.

Defense counsel urges upon us several courses of action as a proper solution to determine the issue of competency of the accused at the posttrial level. Numbered among them was the suggestion that the board of review erred in not remanding the case to a court-martial for a finding of fact of the accused's sanity. Another is that

the board of review erred in rejecting the medical board's findings and consequently exceeded its authority.

We are asked to overturn the factual determination made by the board after weighing all of the evidence. In this case the accused used a ▋▋▋▋ psychiatric report to raise the issue. The Government responded by using The Surgeon General's report. Neither of these were admissible as evidence, See paragraph 144d, pages 266–267 and paragraph 122c, pages 203–204 of the Manual for Courts-Martial, United States, 1951. There were no objections to the board of review considering these reports. The board used these only for the limited purpose of determining if the issue was raised. See paragraph 122c, Manual, supra. The board of review in exercising its ▋▋▋▋ authority reconsidered the question of the mental competency of the accused and examined the evidence presented to it. The board found that the accused possessed sufficient mental capacity to understand the nature of the proceedings against him and to cooperate in his own defense. There was sufficient matter before the board to support its finding as to the limited issue before it. Therefore, we affirm the decision of the board of review.

Chief Judge QUINN concurs.

LATIMER, Judge (concurring in the result):

I concur in the result.

I would concur outright if it were not for the presence of one concept in the majority opinion which ▋▋▋▋ might lead to confusion. There can be no dispute with the proposition that during a trial on the merits the conclusions of a medical board are hearsay and incompetent unless made admissible by stipulation or otherwise. Paragraph 122c of the Manual for Courts-Martial so indicates, but other portions of reports which are officially required might not be subject to objection. The pertinent part of that paragraph reads:

"So much of the report of a board of medical officers or any other medical record as pertains to entries of facts or events which are properly admissible under the official records or business entry exceptions to the hearsay rule (144b, c) may be received in evidence. The opinions as to the mental condition of the accused contained in such a report are not within these exceptions to the hearsay rule. They may be received in evidence by stipulation, and in a proper case, as memoranda of past recollections recorded (146a)." [Paragraph 122c, Manual for Courts-Martial, United States, 1951.]

At the board of review level a different question is presented. The Code does not set out the law on insanity, so we are compelled to look to the Manual for procedural guidance. Paragraph 124, Manual for Courts-Martial, United States, 1951, which governs higher authorities—under military law a board of review falls in that category—provides:

"After consideration of the record as a whole, if it appears to the convening authority or higher authority that a reasonable doubt exists as to the sanity of the accused, he should disapprove any findings of guilty of the charges and specifications affected by such doubt and take appropriate action with respect to the sentence. Such authority will take the action prescribed in 121 before taking action on the record whenever it appears from the record of trial or otherwise that further inquiry as to the mental condition of the accused is warranted in the interest of justice, regardless of whether any such question was raised at the trial or how it was determined if raised."

That paragraph seems to place a dual responsibilty on the boards of review. First, if on the record the board has a reasonable doubt about the sanity of the accused, it should disapprove those findings of guilt which are affected and grant a rehearing. Second, if it appears from the record or *otherwise* that further inquiry as to accused's mental condition is warranted, the board is directed to obtain a report

from a board of medical officers. It would be sheer futility to require the board of review to get a report on accused's sanity from medical officers if their conclusions could not be used to support an appellate finding. Therefore, if the board of review can consider the one report, it should not be limited to that alone, for in many instances psychiatrists disagree and the board should be encouraged to obtain and use the opinions of such other medical experts as it deems necessary. Then, based on the record of trial and the supplemental data obtained in the form of the requested medical reports, the board makes its determination. In the event the board has no doubt about accused's sanity, a rehearing is not required. But, assuming the board has reasonable doubts about his mental condition and in the interest of justice

concludes the findings and sentence should be set aside, then the record must be returned to the court-martial for a hearing on that issue. If any other interpretation is adopted, boards of review will become trial forums which must subpoena witnesses, have reporters present, take sworn testimony, and accord the accused the right of confrontation and cross-examination. That sort of proceeding would unnecessarily muddle the appellate processes.

In this instance, the board of review properly considered the medical reports together with the evidence in the record, reached the conclusion that the interests of justice required no further hearing on accused's mental condition, and thereupon affirmed the conviction. Therefore, I join in affirming its decision.