**Denzil R. ALLEN, Petitioner,**

v.

**Rolland F. VanCANTFORT, Respondent.**

**Civ. No. 11–92.**

United States District Court,
D. Maine, S. D.

Aug. 4, 1970.

---

George E. Martz, Indianapolis, Ind., Jeremiah D. Newbury, Portland, Me., Peter L. Obremskey, Lebanon, Ind., for petitioner.

Terry Reiniche, Lt. Col., U.S.M.C., Office of Judge Advocate General of Navy, Washington, D. C., Peter Mills, U. S. Atty., Portland, Me., for respondent.

## OPINION AND ORDER OF THE COURT

GIGNOUX, District Judge.

On September 9, 1968, at Da Nang, Republic of Vietnam, Denzil R. Allen, then a Lance Corporal in the United States Marine Corps, was found guilty by a general court-martial, upon his plea of guilty, of five specifications of premeditated murder, in violation of Article 118 of the Uniform Code of Military Justice, 10 U.S.C. § 918. He was sentenced to be reduced to Pay Grade E–1, to be confined at hard labor for the term of his natural life, to forfeit all pay and allowances, and to be dishonorably discharged from the service. On October 12, 1968, the convening authority, pursuant to a pretrial agreement, approved only so much of the sentence as provided for a dishonorable discharge, confinement at hard labor for 20 years, forfeiture of all pay and allowances, and reduction to Pay Grade E–1. On the same date, the convening authority designated the United States Naval Disciplinary Command at Kittery, Maine, as the place of temporary custody pending appellate review of the conviction pursuant to Article 66 of the Uniform Code of Military Justice, 10 U.S.C. § 866, and petitioner has been confined in the Disciplinary Command Barracks at Kittery since December 11, 1968. On November

7, 1969, the United States Navy Court of Military Review affirmed the findings of guilty and the sentence as approved. The Court also denied Allen's petition for a new trial under Article 73 of the Uniform Code of Military Justice, 10 U.S.C. § 873. On February 19, 1970, the United States Court of Military Appeals denied Allen's petition for grant of review of the decision of the Court of Military Review pursuant to Article 67 of the Uniform Code of Military Justice, 10 U.S.C. § 867. Having finally exhausted his military remedies, see Gusik v. Schilder, 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146 (1950); Noyd v. Bond, 395 U.S. 683, 693–698, 89 S.Ct. 1876, 23 L.Ed.2d 631 (1969) [1], Allen has now filed in this Court a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 et seq. He has been represented by civilian counsel of his own choosing throughout the proceedings in this Court, and an evidentiary hearing has been held, at which there was received in evidence the complete record of petitioner's court-martial and subsequent proceedings before the military courts and such additional testimony as petitioner chose to present. Petitioner's sole contention in this Court is that he was denied his Fifth Amendment right to due process of law and his Sixth Amendment right to counsel in his court-martial proceedings because of the ineffective assistance of his trial counsel.[2]

I

At the outset, it must be recognized that the scope of review available to a military prisoner petitioning for habeas corpus in the District Courts of the United States is considerably narrower than that available to a civilian prisoner seeking the same relief. The controlling cases are Hiatt v. Brown, 339 U.S. 103, 70 S.Ct. 495, 94 L.Ed. 691 (1950) and Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508, reh. denied, 346 U.S. 844, 74 S.Ct. 3, 98 L.Ed. 363 (1953). See also Whelchel v. McDonald, 340 U.S. 122, 71 S.Ct. 146, 95 L.Ed. 141 (1950).

In Hiatt v. Brown, supra, the Supreme Court held that it was beyond the competence of the civil courts to review due process claims arising in military proceedings. The Court said:

> The Court of Appeals also concluded that certain errors committed by the military tribunal and reviewing authorities had deprived respondent of due process. We think the court was in error in extending its review, for the purpose of determining compliance with the due process clause, to such matters as the propositions of law set forth in the staff judge advocate's report, the sufficiency of the evidence to sustain respondent's conviction, the adequacy of the pretrial investigation, and the competence of the law member and defense counsel. (citation omitted) It is well settled that "by habeas corpus the civil courts exercise no supervisory or correcting power over the proceedings of a court-martial. * * * The single inquiry, the test, is jurisdiction." (citation omitted) In this case the court-martial had jurisdiction of the person accused and the offense charged, and acted within its lawful powers. The correction of any errors it may have committed is for the military authorities which are alone authorized to review its decision. (citations omit-

---

1. Two prior habeas corpus petitions from Allen were dismissed by this Court for failure to exhaust all available military remedies: Allen v. VanCantfort, No. 10–183 (D.Me., May 16, 1969); Allen v. VanCantfort, No. 11–3 (D.Me., July 18, 1969), aff'd, 420 F.2d 525 (1st Cir. 1970). A habeas corpus petition filed by Allen with the Court of Military Appeals was also denied by that Court on May 29, 1969.

2. Petitioner makes no contention that his court-martial was not properly constituted, or that it did not have jurisdiction over his person and over the crime with which he was charged. Nor does he raise in this Court various other challenges to the court-martial proceedings which he urged before the military courts on review.

ted) 339 U.S. at 110–111, 70 S.Ct. at 498.

In Burns v. Wilson, *supra,* the prevailing opinion [3] approved Hiatt v. Brown and stated:

The military courts, like the state courts, have the same responsibilities as do the federal courts to protect a person from a violation of his constitutional rights. In military habeas corpus cases, even more than in state habeas corpus cases, it would be in disregard of the statutory scheme if the federal civil courts failed to take account of the prior proceedings—of the fair determinations of the military tribunals after all military remedies have been exhausted. Congress has provided that these determinations are "final" and "binding" upon all courts. We have held before that this does not displace the civil courts' jurisdiction over an application for habeas corpus from the military prisoners. (citation omitted) But these provisions do mean that when a military decision has dealt fully and fairly with an allegation raised in that application, it is not open to a federal civil court to grant the writ simply to re-evaluate the evidence. (citation omitted)

\*    \*    \*    \*    \*    \*

\*  \*  \* [I]t is not the duty of the civil courts \* \* \* to re-examine and reweigh each item of evidence of the occurrence of events which tend to prove or disprove one of the allegations in the applications for habeas corpus. *It is the limited function of the civil courts to determine whether the military have given fair consideration to each of these claims.* (citation omitted) 346 U.S. at 142, 144, 73 S.Ct. at 1048 (emphasis supplied)

◼ The Supreme Court has neither elaborated nor modified the "fair consideration" test pronounced in Burns v. Wilson in any material respect.[4] Although the restrictiveness of the *Burns* rule has been questioned by some courts, Rushing v. Wilkinson, 272 F.2d 633, 641 (5th Cir. 1959), cert. denied, 364 U.S. 914, 81 S.Ct. 280, 5 L.Ed.2d 229 (1960); Sweet v. Taylor, 178 F.Supp. 456, 458 (D.Kan.1959); *see also* Weiner, Courts-Martial and the Bill of Rights, 72 Harv. L.Rev. 266, 303 (1958), and apparently ignored by others, White v. Humphrey, 212 F.2d 503, 507 (3rd Cir.), cert. denied, 348 U.S. 900, 75 S.Ct. 222, 99 L.Ed. 707 (1954); Harris v. Ciccone, 290 F. Supp. 729, 733 (W.D.Mo.1968); In re Stapley, 246 F.Supp. 316, 320–322 (D. Utah 1965), *cf.* Ashe v. McNamara, 355 F.2d 277, 280 n. 3 (1st Cir. 1965), it is now reasonably clear, at least until the Supreme Court has spoken to the contrary, that in considering constitutional claims presented by military prisoners, a federal court's inquiry is limited to the question of whether the military tribunals have given full and fair consideration to the contentions raised by the petitioner. Kennedy v. Comman-

3. Mr. Chief Justice Vinson wrote the plurality opinion, in which Mr. Justice Reed, Mr. Justice Burton and Mr. Justice Clark joined. Mr. Justice Jackson concurred in the result, without opinion. 346 U.S. at 146, 73 S.Ct. 1045. Mr. Justice Minton concurred on the ground that civilian courts can only review the formal jurisdiction of a military court. *Id.* Mr. Justice Douglas, joined by Mr. Justice Black dissented, arguing that, as in review of state convictions, any denial of due process entitles military petitioners to habeas relief. 346 U.S. at 150, 73 S.Ct. 1045. Mr. Justice Frankfurter wrote a separate opinion, 346 U.S. at 148, 73 S.Ct. 1045, expanded upon denial of rehearing, 346 U.S. at 844, 74 S.Ct. 3,

in which he expressed the view that the issues were not ripe for decision.

4. The Court said it was following Burns in Fowler v. Wilkinson, 353 U.S. 583, 584, 77 S.Ct. 1035, 1 L.Ed.2d 1054 (1957), and passing references to Burns may be found in United States v. Augenblick, 393 U.S. 348, 350 n. 3, 351, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969); Morse v. Boswell, 393 U.S. 802, 809, 89 S.Ct. 41, 21 L.Ed. 2d 86 (1968) (Douglas, J., dissenting to mem. denial of application to stay), cert. denied, 393 U.S. 1052, 89 S.Ct. 687, 21 L.Ed.2d 694 (1969); Reid v. Covert, 354 U.S. 1, 37 n. 68, 56, 77 S.Ct. 1222, 1 L. Ed.2d 1148 (1957). None of these references are enlightening.

dant, U. S. Naval Disciplinary Barracks, 377 F.2d 339, 342 (10th Cir. 1967); Rushing v. Wilkinson, *supra*, 272 F.2d at 641–642; Mitchell v. Swope, 224 F.2d 365, 366–367 (9th Cir. 1955); Bourchier v. Van Metre, 96 U.S.App.D.C. 181, 223 F.2d 646, 647–648 (1955); Suttles v. Davis, 215 F.2d 760, 761, 763 (10th Cir.), cert. denied, 348 U.S. 903, 75 S.Ct. 228, 99 L.Ed. 709 (1954); Easley v. Hunter, 209 F.2d 483, 486–487 (10th Cir. 1953); Swisher v. United States, 237 F.Supp. 921, 924–929 (W.D.Mo.1965), aff'd, 354 F.2d 472 (8th Cir. 1966). *See generally* Note, Developments in the Law—Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1208–1238 (1970).

## II

■■ The contention that petitioner was denied the effective assistance of counsel in his court-martial proceedings is based upon his claim that his trial counsel unduly influenced and improperly persuaded him to sign a pretrial agreement and to plead guilty. Petitioner asserts that his trial counsel failed to advise petitioner of his legal rights; that his trial counsel failed to investigate the charges against petitioner and to talk to material witnesses critical to his defense; and, most particularly, that his trial counsel failed to develop the defense of insanity and to have petitioner examined by psychiatrists prior to trial. After a careful examination of the military record, this Court is wholly satisfied that each one of these claims was fully and fairly considered and decided by the military courts on review and that there was no error in their affirmance of the judgment of the court-martial.

The military record discloses that petitioner and six other marines were arrested and charged with the premeditated and brutal murders of five Vietnamese civilians on May 5 and 6, 1968. Petitioner and several of the others confessed to the killings. Petitioner was the only one charged with all five killings, and the evidence clearly indicated that he was the ringleader. Initially, petitioner was assigned as trial defense counsel, Captain John E. Russell, an officer in the Judge Advocate General's Corps, who represented him in the mandatory pretrial investigation pursuant to Article 32 of the Uniform Code of Military Justice, 10 U.S.C. § 832. Russell interviewed the available witnesses and planned a defense based principally upon petitioner's insanity. Since Russell's tour in Vietnam was to terminate before petitioner could be brought to trial, however, Russell arranged, with petitioner's approval, to have a fellow military attorney, Captain Sandy S. McMath, assume petitioner's defense. Russell turned over his complete file to McMath in mid-July 1968, and fully briefed him on the results of his investigation and the theory of his projected defense.

Captain McMath was a graduate of the University of Arkansas School of Law, a member of the Arkansas bar, and, like Captain Russell, was a certified Judge Advocate in conformance with Article 27(b) of the Uniform Code of Military Justice, 10 U.S.C. § 827(b). Prior to undertaking petitioner's case, he had represented a substantial number of defendants in general court-martial proceedings, and had successfully defended several servicemen charged with murder.

McMath's first inclination also was to attempt an insanity defense. Late in July 1968, however, he became convinced that the evidence against petitioner, including his own confession, was so overwhelming, and the chances of getting a favorable report from the military psychiatrists available in Vietnam were so remote, that petitioner's interests would be best served by the alternative tactic which has become the gravamen of petitioner's complaint.

Petitioner's conviction on any one of the five specifications of premeditated murder would have carried with it a mandatory sentence of life imprisonment or death. Uniform Code of Military Justice, Article 118, 10 U.S.C. § 918. McMath determined that the probability

of winning acquittals on all five specifications was exceedingly remote. He was aware, moreover, that the issue of insanity, even if not raised at trial, could be raised on appeal before the Court of Military Review.[5] Furthermore, McMath knew that if the appellate courts found that there was sufficient doubt concerning petitioner's sanity to warrant a new trial, petitioner could in no event receive a longer sentence than the sentence previously imposed and approved, even if he were reconvicted of premeditated murder.[6] McMath, therefore, negotiated with the convening authority a guilty plea pursuant to a pretrial agreement which reduced the charges to "non-capital" and provided for a maximum 20-year sentence. The effect of this agreement was that, with good behavior, petitioner's maximum period of confinement would be seven years. After some hesitation, petitioner approved of this strategy and signed the pretrial agreement on August 22, 1968. McMath's plan, which he fully explained to petitioner, was to arrange for extensive civilian psychiatric evaluation upon petitioner's conviction and return to the United States and to raise the insanity issue on appeal.

At petitioner's trial and providency hearing on September 9, 1968, McMath withheld any evidence of insanity (or of any other defense), and petitioner, in response to direct questions from the law officer, freely admitted every element of the charges against him and denied that he had any defenses thereto. McMath concurred in petitioner's statements. Petitioner's only presentation consisted of statements in mitigation and extenuation of his sentence. McMath's decision not to present any evidence which he had concerning a possible insanity defense was expressly for the purpose of maintaining the integrity of the guilty plea and the pretrial agreement.

Throughout the foregoing proceeding, petitioner expressed no dissatisfaction with McMath's performance as his defense counsel, and in fact, following his conviction, petitioner requested that McMath be appointed his appellate defense counsel. Shortly thereafter, however, McMath was rotated back to the United States; his request that he be allowed to represent petitioner on appeal was denied by the Appellate Review Division; and another military lawyer, Captain John N. Stafford, was assigned as appellate defense counsel.

On January 23, 1969, Stafford, pursuing McMath's strategy, filed with the Navy Court of Review a motion requesting a psychiatric examination of peti-

---

5. Manual for Courts-Martial United States (1951), ¶ 124:

> After consideration of the record as a whole, if it appears to the convening authority or higher authority that a reasonable doubt exists as to the sanity of the accused, he should disapprove any findings of guilty of the charges and specifications affected by such doubt and take appropriate action with respect to the sentence. Such authority will take the action prescribed in 121 before taking action on the record whenever it appears from the record of trial or otherwise that further inquiry as to the mental condition of the accused is warranted in the interest of justice, regardless of whether any such question was raised at the trial or how it was determined if raised.

Paragraph 124 of the revised edition of the Manual (effective August 1, 1969), in relevant part, is substantially identical.

In United States v. Burns, 2 U.S.C. M.A. 400, 9 C.M.R. 30, 34–36 (1953), the Court of Military Appeals held that a Board of Review (now the Court of Military Review) is a "higher authority" within the meaning of paragraph 124. The Court of Military Appeals has also affirmed the authority of the Court of Military Review to take appropriate action when an issue is raised at the appellate level as to the mental condition of the accused, even though no such question was raised at the trial. See, e. g., United States v. Thomas, 13 U.S.C.M.A. 163, 32 C.M.R. 163, 168–169 (1962); United States v. Roland, 9 U.S.C.M.A. 401, 26 C.M.R. 181, 184–185 (1958).

6. Manual for Courts-Martial United States (1951), ¶ 109(g) (2). This provision is found in ¶ 110(2) in the 1969 edition.

tioner by a three-man board of medical officers at the United States Naval Hospital, Philadelphia, Pennsylvania. This motion was based on a psychiatric examination of petitioner in San Diego, which had been arranged by McMath while petitioner was in transit to his current place of custody in Maine. Because the psychiatrist had found that petitioner "is not suffering from any major mental illness now or in the past," the Court concluded that no reasonable doubt existed as to his sanity and denied the motion. Thereafter, on April 28, 1969, petitioner's present counsel, who had been retained by petitioner's family following his return to the United States, filed with the Court of Review the report of a second civilian psychiatrist, which set forth his diagnosis of chronic paranoid schizophrenia and his opinion that petitioner was not legally responsible for his acts at the time of the alleged offenses. The Court thereupon reconsidered its denial of the previous request for a psychiatric examination, and on May 28, 1969, remanded petitioner to the United States Naval Hospital at Philadelphia, where he remained for evaluation for much of the summer. The three members of the board of medical officers, all qualified psychiatrists, filed their report on August 7, 1969. Their diagnosis was that petitioner was suffering from a passive-aggressive personality disorder, but that petitioner was not suffering from mental defect or disease so as to be unable at the time of the killings to distinguish right from wrong or to adhere to the right.[7] Petitioner's counsel next submitted the report of a third civilian psychiatrist, whose conclusion was that petitioner had never been psychotic, but was suffering from a passive-aggressive personality disorder and probably could not distinguish right from wrong at the time of the killings. The Court of Military Review, after re-

ceiving the psychiatric report of the Navy Medical Board and after evaluating the reports of the three civilian psychiatrists, concluded that since five of the six psychiatrists who had examined petitioner were in agreement that the accused suffered only from a personality or character disorder, which did not constitute legal insanity[8], the issue of sanity was not raised and further inquiry into petitioner's mental condition was not required. Although not assigned as error, the Court further found, in accordance with the report of the Navy Medical Board, that petitioner possessed sufficient mental capacity to understand the nature of the proceedings against him and to cooperate in his defense[9].

In written and oral argument before the Court of Military Review, and in support of his petition for review by the Court of Military Appeals, petitioner's present counsel strenuously urged each and every allegation as to the inadequacy of petitioner's trial defense counsel which he raises in this Court. After a careful scrutiny of the extensive trial and appellate record and a thorough consideration of petitioner's allegations, the Court of Military Review rejected petitioner's contentions, and the Court of Military Appeals denied his request for review. In a comprehensive opinion, the Court of Military Review observed that trial defense counsel had serious problems to resolve in defending petitioner, who was charged with five offenses of premeditated murder, conviction of any one of which meant a mandatory life imprisonment sentence; that the evidence developed in the pretrial investigation was overwhelming to prove all five murders; that petitioner had made a full and complete confession; that there was no definite evidence in the pretrial investigation to suggest that petitioner was not legally responsible for his actions, other than the savage and brutal

---

7. *See* Manual for Courts-Martial United States (1951), ¶ 120(b); 1969 edition ¶ 120(b).

8. *Id.*

9. *See* Manual for Courts-Martial United States (1951), ¶ 120(c); 1969 edition ¶ 120(d).

nature of the killings, a fact which alone did not demonstrate a lack of responsibility (citing United States v. Dunnahoe, 6 U.S.C.M.A. 745, 21 C.M.R. 67 (1956)); that trial defense counsel's decision to attempt to get a favorable pretrial agreement and to preserve the defense of insanity for appeal if favorable psychiatric evaluation could be obtained was not illegal or unethical, and did not constitute inadequate representation (citing United States v. Wimberly, 16 U.S.C.M.A. 3, 36 C.M.R. 159 (1966)); and that with the full knowledge and consent of petitioner, trial defense counsel negotiated a favorable pretrial agreement which provided an extremely light sentence for the offenses involved. In sum, the Court concluded, in the succinct words of Hendry, J., that "the defense is not entitled to an opportunity to retry the issues at a new trial merely because the trial tactics failed."

On the basis of the entire military record in this case, which has been summarized above, this Court concludes that the military courts have given full and fair consideration to petitioner's present claims of the inadequacy of his trial defense counsel. It is evident that, in this case as in *Burns*, petitioner and his counsel "simply demand an opportunity to make a new record, to prove *de novo* in the District Court precisely the case which they failed to prove in the military courts. * * * [D]ue regard for the limitations on a civil court's power to grant such relief precludes such action." Burns v. Wilson, *supra,* 346 U.S. at 146, 73 S.Ct. at 1050.

### III

In view of the doubt which has been raised by some courts as to whether Burns v. Wilson should be read to bar any *de novo* review by the civil courts of constitutional issues presented to and considered by the military courts, this Court has independently examined both the military record and the record of the present habeas corpus hearing. On the basis of such examination, the Court is satisfied that nothing of significance was brought out in the habeas corpus hearing which was not considered by the Navy Court of Review, or which would justify this Court in concluding that McMath's representation of petitioner in his court-martial proceedings was so inadequate as to constitute a denial of petitioner's constitutional right to the effective assistance of counsel.

It must be remembered that the overriding issue in this case is the soundness of Captain McMath's decision in August and September 1968, to plead petitioner guilty pursuant to the pretrial agreement and to withhold the insanity defense for later review. McMath was presented with a crucial tactical decision. Either petitioner defended on the merits, and faced a near certain conviction and mandatory life sentence on each specification, or he pleaded guilty, received a maximum sentence of 20 years (which good behavior could reduce to seven years), and preserved the insanity issue for a later time when more sympathetic help could be obtained and the likelihood of a complete acquittal would be greater. He chose the latter course, with petitioner's complete approval and cooperation.

Under such circumstances, petitioner has failed to show that McMath's advice was so inept that he lacked the minimum standards of competence necessary to satisfy petitioner's constitutional right to counsel. In order to assume constitutional proportions, "a lack of effective assistance of counsel must be of such a kind as to shock the conscience of the Court and make the proceedings a farce and mockery of justice." United States ex rel. Boucher v. Reincke, 341 F.2d 977, 982 (2d Cir. 1965) (quoting from United States v. Wight, 176 F.2d 376, 379 (2d Cir. 1949), cert. denied, 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950)); Snead v. Smyth, 273 F.2d 838, 842 (4th Cir. 1959); Diggs v. Welch, 80 U.S.App.D.C. 5, 148 F.2d 667, 669–670, cert. denied, 325 U.S. 889, 65 S.Ct. 1576, 89 L.Ed. 2002 (1945). "Mere improvident strategy, bad tactics, mistake, carelessness or inexperience do not necessarily amount to

ineffective assistance of counsel, unless taken as a whole the trial was a 'mockery of justice.' " Edwards v. United States, 103 U.S.App.D.C. 152, 256 F.2d 707, 708 (Burger, J.), cert. denied, 358 U.S. 847, 79 S.Ct. 74, 3 L.Ed.2d 82 (1958). Accordingly, the courts have consistently refused to reassess by hindsight the judgment of defense counsel on questions of strategy, trial tactics or trial decisions. *See, e. g.,* Bruce v. United States, 126 U.S.App.D.C. 336, 379 F.2d 113, 116–118 (1967); Frand v. United States, 301 F.2d 102, 103 (10th Cir. 1962); Alexander v. United States, 290 F.2d 252, 254 (5th Cir.), cert. denied, 368 U.S. 891, 82 S.Ct. 144, 7 L.Ed.2d 89 (1961). And, with particular reference to the charge that defense counsel improperly advised a guilty plea, it has been repeatedly held that what retroactively may appear to have been an error of judgment on the part of counsel does not establish a violation of the defendant's constitutional right. *See, e. g.,* Bruce v. United States, *supra;* Alexander v. United States, *supra;* Kennedy v. United States, 259 F.2d 883 (5th Cir. 1958), cert. denied, 359 U.S. 994, 79 S.Ct. 1126, 3 L.Ed.2d 982 (1959); Diggs v. Welch, *supra.*[10]

Certainly, when petitioner's allegations are measured by the foregoing standard, the Court cannot say that McMath's decision was so unsound and his representation of petitioner was so ineffective "as to shock the conscience of the court and make the proceedings a farce and mockery of justice." Rather, this is clearly a case where hindsight reveals a possible tactical error "over which conscientious attorneys might differ." United States v. Garguilo, 324 F.2d 795, 797 (2d Cir. 1963). As the Court said in Alexander v. United States, *supra,* "the strategy,

viewed as a calculated risk, as of the time of the plea, cannot be criticized." 290 F.2d at 254. To the extent, therefore, that it is permissible for this Court to review *de novo* the decision of the military courts that petitioner was not denied the effective assistance of counsel, the Court is satisfied that McMath's representation of petitioner was not so inadequate as to constitute a denial of constitutional right.

IV

The Court holds that the military courts gave full and fair consideration to petitioner's present claim of ineffective representation of counsel at his court-martial proceedings. The Court further holds that the entire record in this case reveals no deprivation of petitioner's constitutional right to the effective assistance of counsel. It is therefore

Ordered that the petition is dismissed and the writ denied.

---

10. The standard for effective legal representation in the military courts, like that in federal courts, is not perfection. As the Court of Military Appeals noted in United States v. Bigger, 2 U.S.C.M.A. 297, 8 C.M.R. 97, 101–102 (1953), the Court will not "condemn counsel merely because they lost" or because "they might * * * have adopted what may, at this level, appear to have been a better strategic approach." But military courts have consistently imposed upon counsel a standard equal to that demanded by the federal courts. United States v. Hunter, 2 U.S.C.M.A. 37, 6 C.M.R. 37, 40–42 (1952); United States v. Parker, 6 U.S. C.M.A. 75, 19 C.M.R. 201, 211–213 (1955); United States v. Horne, 9 U.S. C.M.A. 60, 26 C.M.R. 381, 384–386 (1958); United States v. Huff, 11 U.S. C.M.A. 397, 29 C.M.R. 213, 216–218 (1960).