**Denzil R. ALLEN, Petitioner, Appellant,**

v.

**Rolland F. VanCANTFORT, etc.,**
**Respondent, Appellee.**

**No. 7701.**

United States Court of Appeals,
First Circuit.

Jan. 12, 1971.

---

George E. Martz, Indianapolis, Ind., and George W. Latimer, Salt Lake City, Utah, with whom Johnson, Weaver & Martz, Indianapolis, Ind., was on brief, for petitioner-appellant.

Charles J. Keever, Director, Appellate Government Division Navy Appellate Review Activity, Washington, D. C., with whom Peter Mills, U. S. Atty., was on brief, for respondent-appellee.

Before ALDRICH, Chief Judge, Mc-ENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

On June 5, 1968, petitioner, then a lance corporal in the United States Marine Corps, was charged before a general court-martial convened at Da Nang, South Vietnam, with five specifications of premeditated murder in violation of Article 118 of the Uniform Code of Military Justice, 10 U.S.C. § 918 (1964).[1]

---

1. The charge sheet alleged that on May 5, 1968, at or near Van Duong Village, petitioner murdered Nguyen Van Den and Nguyen Cuu Phu with premeditation

According to a stipulation of fact all five victims were unarmed Vietnamese who offered no resistance. On September 9, 1968, petitioner pleaded guilty to all five specifications. In accordance with a pretrial agreement he was sentenced to be reduced to Pay Grade E–1, to be confined at hard labor for twenty years, to forfeit all pay and allowances, and to be dishonorably discharged from the service.

Petitioner appealed his conviction to the United States Navy Court of Military Review, arguing, *inter alia*, that he was not mentally responsible at the time of the commission of these offenses and that his trial counsel was incompetent. On November 7, 1969, the court affirmed his conviction. Two habeas corpus petitions were dismissed by the district court for failure to exhaust all available military remedies. *See* Allen v. VanCantfort, 420 F.2d 525 (1st Cir. 1970). After a petition for review pursuant to Article 67 of the Uniform Code of Military Justice, 10 U.S.C. § 867 (Supp. V, 1970), *amending* 10 U.S.C. § 867 (1964), was denied by the United States Court of Military Appeals, the district court considered petitioner's habeas corpus petition pursuant to 28 U.S.C. § 2241 (1964). Burns v. Wilson, 346 U.S. 137, 139 n. 1, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953). This is an appeal from the district court's denial of that petition. 316 F.Supp. 222. ·

At the outset petitioner contends that, although the court-martial admittedly had jurisdiction of the subject-matter and of the person, it "lost" jurisdiction by virtue of its failure to adhere strictly to the procedural requirements of the Uniform Code of Military Justice, 10 U.S.C. §§ 801–940 (1964), which prevent guilty pleas in cases in which the charge alleges "an offense for which the death penalty may be attached." This argument is based on a statement in McClaughry v. Deming, 186 U.S. 49, 22 S.Ct. 786, 46 L.Ed. 1049 (1902), that, because a "court-martial is the creature of statute * * *, it must be convened and constituted in entire conformity with the provisions of the statute, or else it is without jurisdiction" and that it can "give effect to its sentences * * * [only if] all the statutory regulations governing its proceedings [have] been complied with." *Id.* at 62–63, 22 S.Ct. at 791. Following cases subsequent to *Deming* we read that case as reaching only laws that govern the convening of courts-martial. An error of law not affecting the constitution of the court, its jurisdiction over person and subject matter, or the validity of its sentence, does not cause the court-martial to "lose" jurisdiction. *See* Humphrey v. Smith, 336 U.S. 695, 69 S.Ct. 830, 93 L.Ed. 986 (1949). *See generally* United States ex rel. Innes v. Hiatt, 141 F.2d 664, 665 (3d Cir. 1944); Note, Developments in the Law—Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1211–12 & n. 20 (1970). Whatever need there may have been for *Deming*'s fictional approach to describe as "jurisdictional" errors not strictly so, disappeared with cases that faced directly the question what issues could be raised in federal habeas proceedings. Burns v. Wilson, *supra* (review of military courts); Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953) (review of state courts); Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (review of federal courts).

However, these cases show that our refusal to find lack of jurisdiction does not solve the problem; we must decide whether petitioner can

---

by shooting them with an M-16 rifle; and that on May 6, 1968, at or near Van Duong Bridge, he murdered Ho Lau and Huynh Van Phuc with premeditation by shooting them with an M-16 rifle and detonating grenades near them, and murdered Ho Cam by "hanging him by the neck, cutting his throat with a knife, stabbing him with a knife, then throwing him into a stream and while the said Ho CAM was therein, shooting him with an M-16 rifle and detonating grenades on or near him."

raise, on its own terms, an alleged error of federal statutory law committed by a military court. We hold that he can, resting this decision on the language of the habeas statute. Petitioner can challenge his custody as being "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c) (3). Given this language, we cannot refuse to consider all alleged errors of law committed by the military without explicit authority for doing so. We cannot read Burns v. Wilson, *supra,* as such authority; in mentioning only errors of constitutional magnitude, *Burns* was facing the only question before it. *And see* Jackson v. Taylor, 353 U.S. 569, 77 S.Ct. 1027, 1 L.Ed.2d 1045 (1957) (on habeas, decision based on interpretation of provision of Uniform Code of Military Justice).

▪ Apart from alleged constitutional errors, petitioner makes this claim of a violation of the "laws * * * of the United States." He pleaded guilty to premeditated murder, a capital offense. He claims that this plea was received in violation of Article 45(b) of the Uniform Code of Military Justice, 10 U.S.C. § 845(b) (1964), which provides: "a plea of guilty by the accused may not be received to any charge or specification alleging an offense for which the death penalty may be adjudged." The government argues that this technical defect was cured by the fact that, several days prior to petitioner's guilty plea, the convening authority had signed a reference to trial indicating that the case was to be treated as non-capital. We hold that this satisfied the requirement of Article 45(b) since petitioner was pleading to a charge in which the court-martial had no power to impose a death sentence, and so the statute, referring to cases in which the death penalty "may be adjudged," did not bar the plea.

▪ With respect to constitutional issues, the scope of review in habeas corpus challenges to military convictions is more limited than in comparable civilian cases. Burns v. Wilson, *supra,* 346 U.S. at 139, 73 S.Ct. 1045; Kennedy v. Commandant, etc., 377 F.2d 339, 342 (10th Cir. 1967); Swisher v. United States, 354 F.2d 472, 475 (8th Cir. 1966). In addition, the Supreme Court has said that civil courts should not consider constitutional allegations that have been dealt with "fully and fairly" by a military tribunal. Burns v. Wilson, *supra,* 346 U.S. at 142, 73 S.Ct. 1045. There would appear to be little doubt that petitioner's principal constitutional contention here, *viz.,* that he was denied effective assistance of counsel, was fully considered by the United States Navy Court of Military Review. But we note that considerable confusion has surrounded the "full and fair consideration" standard enunciated in *Burns.* Its validity has been questioned and criticized by both courts and commentators since it was first announced. *See* Burns v. Wilson, *supra,* 346 U.S. at 149, 73 S.Ct. 1045 (Frankfurter, J., separate opinion) and 346 U.S. at 844, 74 S.Ct. 3, 98 L.Ed. 363 (Frankfurter, J., dissenting on denial of rehearing); Rushing v. Wilkinson, 272 F.2d 633, 641 (5th Cir. 1959), cert. denied, 364 U.S. 914, 81 S.Ct. 280, 5 L.Ed. 2d 229 (1960); Wiener, Courts-Martial and The Bill of Rights: The Original Practice II, 72 Harv.L.Rev. 266, 302–303 (1958). Some courts have held that the "full and fair consideration" standard applies only to questions of fact. Kennedy v. Commandant, etc., *supra,* 377 F. 2d at 342–343, or at least that it does not apply to pure questions of law, Augenblick v. United States, 377 F.2d 586, 593, 180 Ct.Cl. 131 (1967), rev'd on other grounds, 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969);[2] Shaw v. Unit-

2. It can be argued that the Court's failure to reverse the Court of Claims on this point casts further doubt on the continuing validity of the "full and fair consideration" standard. The Court has apparently never reiterated that standard although it has cited *Burns* for other propositions of law. *See* United States v. Augenblick, *supra,* 393 U.S. at 350 n. 3, 89 S.Ct. 528 (review of conviction by a military tribunal can be obtained by habeas corpus); Reid v. Covert, 354 U.

ed States, 357 F.2d 949, 174 Ct.Cl. 899 (1966). Other courts have reviewed cases on the merits where the alleged constitutional violation was so unfair as to shock the conscience. *See* Ashe v. McNamara, 355 F.2d 277, 280 (1st Cir. 1965); Sweet v. Taylor, 178 F.Supp. 456, 458 (D.Kan.1959).[3] In view of the questions that have been raised elsewhere regarding the appropriate scope of review in these cases, we deem it appropriate to follow our brethren in other circuits and review briefly petitioner's claims on the merits. *See* Swisher v. United States, *supra*, 354 F.2d at 475 (8th Cir. 1966); Kasey v. Goodwyn, 291 F.2d 174, 178 (4th Cir. 1961), cert. denied, 368 U.S. 959, 82 S.Ct. 404, 7 L.Ed. 2d 391 (1962); Rushing v. Wilkinson, *supra*, 272 F.2d at 642 (5th Cir. 1959). *But see* Mitchell v. Swope, 224 F.2d 365 (9th Cir. 1955); Bourchier v. Van Metre, 96 U.S.App.D.C. 181, 223 F.2d 646 (1955).

▆▆▆ Petitioner's central contention is that he received ineffective assistance of counsel because his attorney advised him to plead guilty rather than to defend on the ground of lack of mental responsibility. In this connection, we note that it has been uniformly held that effectiveness of counsel is not to be judged by hindsight, Brubaker v. Dickson, 310 F.2d 30, 37 (9th Cir. 1962), cert. denied, 372 U.S. 978, 83 S.Ct. 1110, 10 L.Ed.2d 143 (1963), and that the appropriate test is whether counsel's actions were so incompetent as to shock the conscience of the reviewing court. United States ex rel. Boucher v. Reincke,

341 F.2d 977, 982 (2d Cir. 1965). *Accord*, Bruce v. United States, 126 U.S. App.D.C. 336, 379 F.2d 113 (1967); Turner v. Maryland, 303 F.2d 507 (4th Cir. 1962). In the instant case the advice rendered by petitioner's trial counsel not only fails to shock the conscience but appears to have been eminently sound under the circumstances. As the district court found, the evidence against petitioner, which included his own confession, was overwhelming. The chances of obtaining a favorable report from the military psychiatrists available in Vietnam appeared to be remote, as did the probability of winning acquittals on all five specifications. Furthermore, counsel knew that, if on appeal the Navy Court of Military Review determined that there was a reasonable doubt concerning petitioner's sanity, he would be retried; and that, even if he were again found guilty, the maximum sentence would be limited to the twenty years specified in the pretrial agreement. In any event, with good behavior, petitioner's maximum period of confinement would be seven years.

▆▆▆ In addition to the allegation that his counsel's trial strategy was incompetent, petitioner maintains that he was either deliberately misled or, at a minimum, inexcusably misinformed when counsel told him that the insanity defense could be raised on appeal. He claims that he would not have pleaded guilty had he thought this defense could not be raised later. Petitioner concedes that the regulations imply that the insanity question can be raised on appeal.[4]

---

S. 1, 37 n. 68, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957) (the extent to which the Bill of Rights applies to military tribunals is as yet unsettled); Fowler v. Wilkinson, 353 U.S. 583, 584, 77 S.Ct. 1035, 1 L.Ed.2d 1054 (1957) (the Supreme Court retains no supervisory power over the courts which enforce military law).

3. In White v. Humphrey, 212 F.2d 503 (3rd Cir.), cert. denied, 348 U.S. 900, 75 S.Ct. 222, 99 L.Ed. 707 (1954), and Application of Stapley, 246 F.Supp. 316 (D.Utah 1965), the "full and fair con-

sideration" standard was simply ignored by the court.

4. Paragraph 124 of the Manual for Courts-Martial, United States (1951) requires the Court of Review to disapprove findings of guilty if "it appears from the record of trial or otherwise that further inquiry as to the mental condition of the accused is warranted in the interest of justice, regardless of whether any such question was raised at trial." According to United States v. Thomas, 13 U. S.C.M.A. 163, 32 C.M.R. 163 (1962), if

But he contends that, under the statute, he could not legally petition for a new trial without alleging fraud or new evidence that could not have been discovered through the exercise of due diligence at the time of trial. 10 U.S.C. § 873 (1964); Manual for Courts-Martial, United States, ¶ 109(d) (1951). It is clear from its lengthy opinion that the Court of Review carefully considered on the basis of new evidence whether petitioner had made out a prima facie case of insanity on appeal. Thus, even if he were technically correct that he lost his *right* to appeal by virtue of counsel's failure to assert a known defense at trial, petitioner suffered no prejudice. Furthermore, in concluding that it was authorized to consider the insanity issue on appeal, the court relied on the teachings of United States v. Thomas, *supra* note 4, and United States v. Roland, 9 U.S.C.M.A. 401, 26 C.M.R. 181 (1958). It is within the province of the military courts to resolve procedural issues of this type.[5] See United States v. Augenblick, 393 U.S. 348, 352–353, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969), rev'g, Juhl v. United States, 383 F.2d 1009, 181 Ct. Cl. 210 (1967).

Petitioner makes numerous additional allegations regarding the conduct of his defense counsel. He alleges, for example, that counsel failed to investigate the charges, interview possible defense witnesses, or inform him of the requirement that the government must prove him guilty beyond a reasonable doubt. He also accuses counsel of committing a fraud on the court-martial by stating that he knew of no other defenses that could be raised on his client's behalf. None of these allegations are supported by the record. Petitioner also contends that he was denied equal protection and due process because one of his co-defendants was never tried, two were found not guilty, two received clemency, and one received a mere two-year sentence. Although equal protection would of course require that the proceedings against petitioner and his co-defendants accord them all substantially the same procedural safeguards, *see generally* Connor v. Picard, 434 F.2d 673 (1st Cir. 1970), there is no constitutional requirement that their cases receive the same final disposition.[6]

Petitioner's remaining constitutional arguments may be dismissed summarily. The charges brought against him were clearly specific enough to "[apprise] the defendant of what he must be prepared to meet" and to defend himself in any future proceedings taken against him for a similar offense. Russell v. United States, 369 U.S. 749, 763–764, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). Assuming *arguendo* that Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), applies to military prisoners, petitioner waived his right to raise the issue of non-compliance with *Miranda* when he pleaded guilty. McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). Finally, although the Court suggested in Pate v. Robinson, 383 U.S.

---

a prima facie case of insanity is made out, the Court of Review must order a new trial.

Petitioner was tried under the 1951 Manual. Paragraph 124 of the revised edition (effective August 1, 1969) is substantially identical.

5. On appeal, after studying six somewhat contradictory psychiatric reports, the Court of Review determined that petitioner had failed to make out a prima facie case of insanity. Petitioner argues that his sixth amendment right "to be confronted with the witnesses against him" was violated because he had no opportunity to cross-examine the military psychiatrists who had submitted reports. We see no constitutional defect in this procedure which has been adopted by the military courts merely for determining whether a prima facie case has been made out. *See* United States v. Roland, *supra*; United States v. Wimberley, 16 U.S.C.M.A. 3, 36 C.M.R. 159 (1966).

6. Although it is technically not relevant, we note in passing that there was ample support in the record for the district judge's finding that this defendant was the ringleader in all five murders.

**632**

375, 384, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), that the defense of incompetency to stand trial can probably not be waived, there is no evidence in this record to support an allegation of incompetency at the time of trial.

Affirmed.