**UNITED STATES, Appellee,**

v.

**Private (E–1) Joseph D. BRAZIL, SSN 569–08–1245, United States Army, Appellant.**

**SPCM 11967.**

U. S. Army Court of Military Review.

29 Nov. 1977.

Captain Steven J. McAuliffe, JAGC, argued the cause for appellant. With him on the brief were Colonel Robert B. Clarke, JAGC, Lieutenant Colonel John R. Thornock, JAGC, and Captain D. David Hostler, JAGC.

Captain Denis L. Durkin, JAGC, argued the cause for appellee. With him on the brief were Colonel Thomas H. Davis, JAGC, Lieutenant Colonel John T. Sherwood, Jr., JAGC, and Captain Richard A. Kirby, JAGC.

Before JONES, FULTON and FELDER, Appellate Military Judges.

### OPINION OF THE COURT

FELDER, Judge:

In January 1976 the appellant pleaded guilty and was convicted of larceny committed in October 1975 and escape from custody committed in January 1976. He was sentenced to a bad-conduct discharge and confinement for two and a half months. Two issues that were not litigated at trial confront us for resolution.

The first one deals with the sanity of the appellant. Prior to trial at Fort Ord, California, a sanity board, consisting of a military doctor who was assisted by a civilian doctor, concluded that the appellant was legally sane. They evaluated him to be suffering from a "severe anti-social character and behavior disorder with explosive tendencies." Approximately eight months after the trial, another psychiatric examination was conducted at Fort Ord by two military doctors pursuant to an order of this Court. Their findings were consistent with that of the previous board.

About six weeks later the appellant was again tried and convicted by special court-martial for other offenses. The sanity issue was not raised at the second trial. He was confined at the United States Disciplinary Barracks. While there he was diagnosed as psychotic-suffering from paranoid schizophrenia. The psychiatrist reported:

While there is some room for interpretation and some doubt regarding Brazil's status at the time of the 1975 offense and at the time of his January 1976 court-martial, there is an abundance of information, as I have cited, to indicate that at the time of his second offense, and again at the time of the second court-martial, Brazil did not possess sufficient mental capacity to understand the nature of his crime, nor did he understand the nature of the proceedings against him, nor could he conduct or cooperate intelligently in his own defense at the second court-martial.

We ordered a re-examination of the appellant, pursuant to the recommendation of The Surgeon General, primarily to determine whether he is mentally capable of understanding the appellate proceedings and cooperating with his counsel. A sanity board was convened at Fitzsimmons Army Medical Center for that purpose. With the assistance of the Director of Forensic Psychiatry, University of Colorado Medical School, three military doctors determined that the appellant was not mentally ill. Their conclusion is compatible with that of the prior boards, that is, the appellant has an antisocial personality disorder. The Surgeon General concurred in the procedures and findings of that board.

The appellant contends that because of the conflicting psychiatric reports, an evidentiary hearing must be conducted to resolve the question of the appellant's mental responsibility and capacity. He also claims that such a hearing is required because the reports are based upon the mental standard rejected in *United States v. Frederick*, 3 M.J. 230 (C.M.A.1977). We disagree with both assertions.

■ The post-conviction psychiatric reports were considered by us for the limited purpose of determining whether the sanity issue was raised on appeal, so as to require further inquiry into the mental condition of the appellant. *United States v. Thomas*, 13 U.S.C.M.A. 163, 32 C.M.R. 163 (1962); *United States v. Roland*, 9 U.S.C.M.A. 401, 26 C.M.R. 181 (1958); *see* Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 122c. [Hereinafter cited as MCM, 1969 (Rev.)]. In other words, we must decide whether there is some evidence which could reasonably tend to show that the appellant was either mentally irresponsible or incapacitated. MCM, 1969 (Rev.), paragraph 122a. The difference of opinion between psychiatrists is only one factor to be considered. *United States v. Locklin*, 47 C.M.R. 101 (A.C.M.R.1973), *pet. denied*, 22 U.S.C.M.A. 631, 48 C.M.R. 1000 (1973). The mere presentation to us of information concerning the appellant's mental condition does not command a hearing. All matters pertaining to his sanity must be evaluated. *United States v. Triplett*, 21 U.S.C.M.A. 497, 503, 45 C.M.R. 271, 277 (1972).

The record as a whole convinces us that the appellant is a manipulative individual who, according to the last sanity board report, stated that "he pretended to act crazy in order to gain release from the confining facility." His testimony at the first trial was lucid and detailed. It is significant that while appellate review of the first trial was pending, the appellant was tried again but the sanity issue was not raised at the second trial. We conclude, therefore, that the evidence is insufficient to raise the issue of insanity.

■ We reach this same conclusion even though the rejected standard was used to evaluate the appellant. That standard provides that a person is insane if because of mental defect, disease, or derangement he is unable concerning the charges to distinguish right from wrong or to adhere to the right or if he lacks the mental capacity to understand the proceedings and to cooperate intelligently in his defense. MCM, 1969 (Rev.), paragraph 121. The accepted test recommended by the American Law Institute (ALI) provides that a person is not responsible for his criminal conduct if because of mental disease or defect he lacks substantial capacity either to appreciate the criminality of his conduct or to conform to the requirements of law. *United States v. Frederick, supra*, at 234.

The obvious similarity between the two standards is that insanity is predicated upon mental abnormality. The appellant fails both tests. The overwhelming evidence proves that he did not suffer from a mental illness but an antisocial personality disorder. In the absence of evidence of mental illness, further psychiatric evaluation under the accepted standard would produce the same result as the rejected one. Therefore, there was no fair risk that the appellant was prejudiced by use of the old standard.

The second issue that was not litigated below but confronts us is whether the court-martial had in personam jurisdiction over the appellant, who claims that his enlistment into the Army National Guard and entry onto active duty were void. The appellant maintains that he was ineligible for enlistment because he was, when recruited, an adjudged juvenile delinquent, not of good character and on civil probation.

Paragraphs 2–13 and 2–15, National Guard Regulation 600–200, dated 30 July 1973, govern the enlistment of personnel into the Army National Guard. They provide that persons convicted of an offense other than a felony, adjudicated a juvenile delinquent, or on unsupervised unconditional probation may enlist if those disabilities are waived by the State Adjutant General. The regulation also provides that persons convicted of a felony; against whom criminal charges are pending; on parole, probation or under a suspended sentence; or insane, not of good character or have a record of behavior disorders are ineligible for enlistment and no waiver may be granted.

On 6 June 1975 the appellant enlisted in the Army National Guard of the State of California. The enlistment obligated him to serve a period of active duty for training that commenced on 8 August 1975. It was during this training period that he committed the present offenses. During the enlistment process, the appellant informed the recruiter of his extensive juvenile criminal record and probationary status.

Post-trial documents filed with this Court by the Government show that prior to the enlistment, civil authorities terminated the appellant's probationary and juvenile delinquent status. On 5 June 1975 the disqualifying juvenile convictions were waived by the State Adjutant General and the recruiter was directed not to enlist the appellant prior to the termination of his probation. On 20 June 1975 and 6 August 1975, respectively, the civil authorities "closed by admonishment" the offenses involving burglary and malicious mischief. A variety of vehicle code violations were left pending against the appellant at the time of his entry on active duty.

■ The record as a whole demonstrates that the recruiter's conduct was proper and reasonable. *Cf. United States v. Brown*, 23 U.S.C.M.A. 162, 48 C.M.R. 778 (1974). The enlistment disabilities were the waivable type and, in fact, were either removed or waived before the appellant enlisted or entered active duty. His juvenile criminal conduct did not place his disabilities in the non-waivable category as he contends. Admittedly, he was of bad character and had a record of behavior disorders. They were the result of waivable disabilities, i. e., acts of misdemeanor and juvenile delinquency. We believe that the proponents of the regulation envisioned bad character and behavior disorders to be nonwaivable only when they are the consequence of antisocial conduct more serious than the waivable disabilities. Certainly they did not intend for the same disabilities to be categorized as both waivable and nonwaivable.*

Accordingly, the findings of guilty and the sentence are affirmed.

Senior Judge JONES and Judge FULTON concur.

---

* Litigation of the jurisdictional issue in this case is caused by ambiguity in National Guard Regulation 600–200. We believe our interpretation of the regulation, specifically paragraph 2–15e, is judicially sound. Nevertheless, we urge the proponents of the regulation to clarify its provisions as an aid to those charged with the responsibility for its implementation.